Margot NUSBAUM, Plaintiff,

v.

**CB RICHARD ELLIS,
INC., Defendant.**

No. Civ.A. 00–4006(JAG).

United States District Court,
D. New Jersey.

Oct. 26, 2001.

Maureen Binetti, Gregory B. Noble, Wilentz, Goldman & Spitzer, Woodbridge, NJ, counsel for plaintiff.

Carl Greenberg, Richard M. DeAgazio, Budd, Larner, Gross, Rosenbaum, Greenbaum & Sade, Short Hills, NJ, counsel for defendant.

## OPINION

GREENAWAY, District Judge.

This matter comes before the Court on Defendant CB Richard Ellis' ("CBRE") motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). CBRE sets forth three interdependent grounds upon which this Court should dismiss Plaintiff Margot Nusbaum's ("Nusbaum") complaint. First, CBRE asserts that the regulations upon which Nusbaum bases her complaint are invalid because the regulations are an improper alteration of the Family and Medical Leave Act, 29 U.S.C. §§ 2601–2654 (1999). Next, CBRE asserts that Nusbaum fails to state a cognizable claim, pursuant to the New Jersey Law Against Discrimination ("NJLAD"), for failure to provide a reasonable accommodation. Fi-

nally, CBRE asserts that Nusbaum does not assert a cognizable claim of retaliation because she was no longer entitled to leave under the FMLA. CBRE's two latter claims presume the validity of the initial attack upon the regulations promulgated in support of the FMLA. For the reasons set forth below, this Court denies CRBE's motion to dismiss Nusbaum's complaint.

## BACKGROUND[1]

Nusbaum commenced employment as a secretary/word processor for CBRE at its Iselin office on or about March 18, 1996.[2] Prior to March 18, 1996, Nusbaum served as a temporary employee for CBRE for approximately five months. (Compl.¶3.) In or about December of 1997, Nusbaum learned that she would require surgery because of a herniated disk[3] condition. It was at or about this same time that Nusbaum first notified Madeline Gallagher ("Gallagher"), the Administrative Manager for and agent of CBRE, about her need for this surgery. In mid-January 1998, Nusbaum advised Gallagher that the surgery was scheduled for March 17, 1998. At that time, Nusbaum requested medical leave and a copy of the Medical Leave of Ab-

sence Policy referred to in the "Personnel Policies" manual distributed by CBRE to its employees.[4] (Compl.¶¶ 5–6.)

Nusbaum was not given the Medical Leave of Absence Policy when she requested it from Gallagher in mid-January 1998. In February, Nusbaum twice telephoned CBRE's Human Resources Department in California. The Human Resources Department advised Nusbaum that she had to obtain the "local" Medical Leave of Absence Policy from the office manager where she worked. Despite several requests, Nusbaum was never given this policy. Gallagher disregarded Nusbaum's request for medical leave until March 6, 1998. On March 6, Gallagher told Nusbaum that CBRE required a letter of explanation from Nusbaum's doctor.

Nusbaum telephoned the doctor's office and spoke with his secretary. The secretary advised Nusbaum that her employer must submit the request in writing. When Nusbaum advised Gallagher that a written request from CBRE was needed, Gallagher refused to so request. Nusbaum proceeded to type a letter for Gallagher to sign, but Gallagher tossed that letter in the trash in front of Nusbaum and re-

1. For purposes of a motion to dismiss, this Court "must accept as true all of the factual allegations set forth in the pleadings and draw all reasonable inferences therefrom in favor of the nonmoving party." *Bruno v. Hershey Foods Corp.*, 964 F.Supp. 159, 162 (D.N.J.1997).

2. At the time Nusbaum commenced employment, CBRE was operating under the name CB Commercial Real Estate Group, Inc.

3. A herniated disk is a rupture of the fibrocartilage surrounding an intervertebral disk, releasing the nucleus pulposus that cushions the vertebrae above and below. The resultant pressure on spinal nerve roots may cause considerable pain and damage the nerves. Mosby's Medical Nursing Allied Health Dictionary 756 (5th ed.1998).

4. The "Personnel Policies" manual distributed to Nusbaum provided that:

> [e]mployees may be granted an unpaid medical leave of absence due to an employee's serious health condition upon written request and supported by a physician's recommendation. (Employees must meet eligibility requirements and are required to submit a "Request for Leave of Absence" Form.) The leave duration will be determined by the medical circumstances, office staffing requirements and all applicable laws. All paid sick leave and short-term disability benefits should be exhausted prior to commencement of an employee medical leave of absence. Refer to CB Commercial's Employee Medical Leave of Absence Policy for further details.

(Compl.¶ 4.)

quested Nusbaum's doctor's phone number. Nusbaum gave Gallagher the number in an effort to obtain her medical leave, but later that day, Gallagher told Nusbaum that she was awaiting the doctor's return call and would not process Nusbaum's request until she spoke to him. (Compl.¶¶ 7–8, 12.)

Nusbaum immediately protested. Gallagher responded by advising Nusbaum that if the doctor did not return her call, she would not process the paperwork. Nusbaum then told Gallagher that she intended to complain to the Department of Labor because of Gallagher's refusal to process her leave information. When it became clear that Gallagher would not cooperate, Nusbaum telephoned the Woodbridge office of the Department of Labor regarding Gallagher's conduct. A few days before the surgery, Gallagher relented and stated that she would accept whatever Nusbaum's doctor submitted on Nusbaum's behalf. Gallagher asked that Nusbaum pick up a doctor's note and mail it to her. Nusbaum did so on March 16, 1998. (Compl.¶¶ 9–11.)

After Nusbaum's surgery, she telephoned both CBRE's Iselin and California offices several times in an effort to obtain copies of her medical leave papers, the Medical Leave of Absence Policy, and to inquire about the processing of her State disability benefits. Nusbaum spoke with several employees at the California Human resources office about her concerns. On or about June 25, 1998, Nusbaum spoke with a CBRE California Human Resources staff member who assured Nusbaum that Gallagher "had taken care of" the medical leave paperwork relating to Nusbaum's position. However, neither California nor Iselin would supply Nusbaum with a copy of the paperwork. (Compl.¶¶ 13–14.)

Nusbaum's ability to file a state disability claim was hindered by CBRE until Nusbaum contacted the State Disability Office. The State Disability Office permitted Nusbaum to file her claim via phone and fax from her home. Nusbaum's next contact with Gallagher was on June 25, 1998, when Gallagher requested that Nusbaum fax CBRE a medical update from her doctor. Nusbaum explained to Gallagher that her next doctor's appointment was not until July 6, but Gallagher insisted that the update was urgent because the long July 4th weekend was approaching. Nusbaum's doctor wrote a note that Nusbaum faxed to Gallagher on July 1, 1998. This note indicated that Nusbaum would have to remain out of work for four more weeks, and would again be evaluated on July 31, 1998. (Compl.¶¶ 15–17.)

On July 11, 1998, Nusbaum received an overnight letter from CBRE terminating her employment. On July 14, 1998, Nusbaum telephoned Gallagher. Gallagher advised Nusbaum that she did not file a written medical leave of absence form for Nusbaum. At this time, Nusbaum requested the Medical Leave of Absence Policy ("the Policy"). Gallagher faxed Nusbaum a copy of the Policy to her home on July 14, 1998. Nusbaum never saw the document until Gallagher faxed a copy to Nusbaum's home on July 14, 1998. (Compl.¶¶ 18–20.)

The Policy differed from the general language in the "Personnel Policies" manual in that it specifically referred to leave pursuant to the FMLA. The Policy indicated that eligible employees are able to take a total of twelve weeks of medical leave. However, the Policy also stated that "the profit center may extend a medical leave . . . up to a maximum period of absence of 39 weeks." (Compl.¶ 21.)

At no time during her employment did Nusbaum receive any written material about FMLA leave. Nusbaum's employer

never posted a notice summarizing the FMLA's important provisions and the procedures for filing a charge with the Department of Labor's Wage and Hour Division for an employer's violation of the Act, as required under FMLA regulations. CBRE also failed to include information concerning employee rights under the FMLA in its Employee Handbook, in contravention of FMLA regulations. (Compl.¶ 22.)

Nusbaum alleges three counts against CBRE in her complaint. In count 1, Nusbaum alleges that CBRE failed to designate Nusbaum's leave as Family Medical Leave Act ("FMLA") leave, even though it qualified as such a leave, in violation of 29 C.F.R. § 825.208 (1999). Nusbaum alleges that pursuant to regulations implementing the FMLA, she was entitled to twelve weeks of FMLA leave on the day she was terminated because CBRE never designated her leave as FMLA leave. Therefore, Nusbaum alleges, any leave taken did not count against her FMLA entitlement and she was unlawfully terminated. In count 2, Nusbaum alleges that CBRE's unlawful termination of her employment was grounded upon discrimination based on her handicap, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.Stat.Ann. § 10:5–1 through 42 (1993 & Supp.2001). In count three, Nusbaum alleges that as a result of CBRE's actions, including—but not limited to—its failure to notify her of her FMLA rights, and her subsequent termination, CBRE unlawfully interfered with, restrained, and denied the exercise of, and/or Nusbaum's attempt to exercise, rights provided by the FMLA, in violation of the Act. 29 U.S.C. § 2615(a)(1).

CBRE alleges that count one should be dismissed because Nusbaum does not state a claim under the FMLA for "failure to designate leave." CBRE argues that the regulations, promulgated pursuant to the FMLA, upon which Nusbaum relies, are invalid because they contradict the FMLA. CBRE argues that the FMLA allows only twelve weeks of leave, does not require employers to provide notice that a leave is FMLA leave, and that allowing unlimited leave upon the employer's failure to provide FMLA notice would contradict the purpose of the FMLA statute.

CBRE alleges that count two should be dismissed, as a matter of law, because Nusbaum does not state a claim for failure to provide a reasonable accommodation under the NJLAD. CBRE contends that this claim fails because employers are not obligated to provide indefinite medical leave as a reasonable accommodation.

Lastly, CBRE alleges that count three should be dismissed because Nusbaum does not state a claim for either interference with FMLA rights or retaliatory discharge. CBRE argues that there is no cause of action for interference with FMLA rights if Nusbaum received all of the leave to which she was entitled. CBRE also argues that Nusbaum does not establish a *prima facie* case of retaliatory discharge under the FMLA because she was no longer protected by the FMLA when she was terminated. CBRE argues that one of the *prima facie* elements for FMLA retaliation is that Nusbaum must avail herself of a protected right. Therefore, CBRE argues, since Nusbaum had over twelve weeks of leave, it was no longer a protected right.

Nusbaum asserts that she was unlawfully deprived of her twelve weeks of family leave under the applicable regulations because she never received the legally required notice from CBRE regarding FMLA leave. Nusbaum asserts that because of CBRE's failure to designate her leave as FMLA leave, she was fired at a

time when she was entitled to the full protection of the FMLA. (Compl. ¶ 23.)

For the reasons set forth below, CBRE's motion to dismiss the complaint is denied.

## DISCUSSION

### I. The Family and Medical Leave Act

Congress, in the process of passing the FMLA, found that "there is inadequate job security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(a)(4). One of the purposes of the FMLA is to "entitle employees to take reasonable leave for medical reasons...." 29 U.S.C. § 2601(b)(2).

The FMLA allows an eligible employee to take 12 workweeks of leave during any 12–month period for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). In promulgating the Act, the Congress stated that:

> [t]the fundamental rationale for such a policy is that it is unfair for an employee to be terminated when he or she is struck with a serious illness and is not capable of working. Job loss because of illness has a particularly devastating effect on workers who support themselves and on families where two incomes are necessary to make ends meet or where a single parent heads the household.

S.REP. No. 103–3 (1993).

In addition, the FMLA requires that employers post a notice in a conspicuous place that contains excerpts or summaries of pertinent provisions of the FMLA. 29 U.S.C. § 2619(a). This requirement makes evident that the FMLA "does not contemplate allowing employers to benefit from their employee's lack of knowledge about their FMLA rights." *Routes v.*

*Henderson,* 58 F.Supp.2d 959, 980 (S.D.Ind.1999).

The regulations at issue in the present case deal not only with a general notice to all employees, but also with notice specific to Nusbaum when she requested medical leave. In *Routes,* the court, relying on 29 C.F.R. § 825.208(b)(1), stated that if an employer "fails to notify the employee of applicability of the FMLA to the employee's medical leave, the employee is left without important information by which to structure the leave." *Id.* The court observed that this is especially true when there are no notices or information about the FMLA available in the workplace. *Id.* at 980–981.

### II. STANDARD OF REVIEW ON A MOTION TO DISMISS, PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

A motion to dismiss, pursuant to Federal Rules Civil Procedure 12(b)(6), may be granted only, if accepting all well-pled allegations in the complaint as true, and viewing them in the light most favorable to Nusbaum, she is not entitled to relief. *Nami v. Fauver,* 82 F.3d 63, 65 (3d Cir. 1996). This Court may not dismiss the complaint unless Nusbaum can prove no set of facts which would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45– 46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Graves v. Lowery,* 117 F.3d 723, 726 (3d Cir.1997).

"The issue is not whether [Nusbaum] will ultimately prevail but whether she is entitled to offer evidence to support her claims." *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). In setting forth a valid claim, Nusbaum is required only to plead "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P.

8(a). Thus, her "complaint ... must set forth sufficient information to suggest that there is some recognized legal theory upon which relief may be granted." *District of Columbia v. Air Fla.,* 750 F.2d 1077, 1078 (D.C.Cir.1984).

In the case at bar, the question of whether Nusbaum asserts a claim upon which relief can be granted depends upon whether two regulations, promulgated by the Department of Labor ("DOL"),[5] are valid, pursuant to the Family and Medical Leave Act, 29 U.S.C. §§ 2601, 2611–19, 2631–36, and 2651–54 ("FMLA"). To de-termine whether the regulations in question are valid, this Court must apply the two-pronged test articulated in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

## III. THE TWO-PRONGED *CHEVRON* TEST

■ In *Chevron,* the Supreme Court articulated a two-pronged standard that this Court must apply when reviewing the DOL's construction of the FMLA. *Id.* at

---

5. The two regulations in question in the case at bar are 29 C.F.R. §§ 825.208 and 825.700 (2001). Section 825.208 states, in relevant part that:

(a) In all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee as provided in this section. . . .

(b) (1) Once the employer has acquired knowledge that the leave is being taken for an FMLA required reason, the employer must promptly (within two business days absent extenuating circumstances) notify the employee that the paid leave is desig-nated and will be counted as FMLA leave. . . .

(c) If the employer requires paid leave to be substituted for unpaid leave, or that paid leave taken under an existing leave plan be counted as FMLA leave, this decision must be made by the employer within two busi-ness days of the time the employee gives notice of the need for leave, or, where the employer does not initially have sufficient information to make a determination, when the employer determines that the leave qualifies as FMLA leave if this happens later. *The employer's designation must be made before the leave starts, unless the em-ployer does not have sufficient information as to the employee's reason for taking the leave until after the leave commenced.* If the employer has the requisite knowledge to make a determination that the paid leave is for an FMLA reason at the time the employ-ee either gives notice of the need for leave or commences leave and fails to designate the leave as FMLA leave (and so notify the employee in accordance with paragraph (b)), *the employer may not designate leave as FMLA leave retroactively, and may designate only prospectively as of the date of notifica-tion to the employee of the designation.* In such circumstances, the employee is subject to the full protections of the Act, but none of the absence preceding the notice to the employee of the designation may be count-ed against the employee's 12–week FMLA leave entitlement.

*Id.* (emphasis added).

Section 825.700 further states, in relevant part, that:

(a) An employer must observe any employ-ment benefit program or plan that provides greater family or medical leave rights to employees than the rights established by the FMLA. Conversely, the rights estab-lished by the Act may not be diminished by any employment benefit program or plan. For example, a provision of a CBA [collec-tive bargaining agreement] which provides for reinstatement to a position that is not equivalent because of seniority (e.g., pro-vides lesser pay) is superseded by FMLA. If an employer provides greater unpaid family leave rights than are afforded by FMLA, the employer is not required to extend addi-tional rights afforded by FMLA, such as maintenance of health benefits (other than through COBRA) [Consolidated Omnibus Budget Reconciliation Act of 1985, PL 99–272, 100 Stat 82 (codified in scattered sec-tions throughout the U.S.C.) ], to the addi-tional leave period not covered by FMLA. *If an employee takes paid or unpaid leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement.*

*Id.* (emphasis added).

842, 104 S.Ct. 2778. This Court must first ask whether Congress has spoken directly on the precise question at issue. *Id.* If the intent of Congress is clear, this Court must give effect to the unambiguously expressed intent of Congress and the Court need not proceed any further. *Id.* at 842–43, 104 S.Ct. 2778. If this Court determines that Congress has not spoken directly on the precise question at issue, this Court must apply the second prong of *Chevron* and ask whether the DOL regulation is based on a permissible construction of the statute. *Id.* at 843, 104 S.Ct. 2778. This Court "need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading [that this] [C]ourt would have reached if the question initially had arisen in a judicial proceeding." *Id.* at 843 n. 11, 104 S.Ct. 2778.

■ Under this two-pronged approach, this Court is concerned, first and foremost, with congressional intent as manifested in the statutory scheme. If that intent is clear and unambiguous, this Court need only act in accordance with the Congress' manifest intent. Absent such clarity of intent, however, an administrative agency such as the DOL is entitled to clarify or flesh out operative aspects of the statutory scheme. In *Chevron,* the Supreme Court explained that "[t]he power of an administrative agency to administer a congressionally created ... program necessarily requires the formulation of policy and the making of rules to fill any gap left, implicitly or explicitly, by Congress." *Id.* (quoting *Morton v. Ruiz,* 415 U.S. 199, 231, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974)).

■ If the gap was left explicitly by Congress to the DOL, "there is an express delegation of authority to the [DOL] to elucidate a specific provision of the statute by regulation." *Chevron,* 467 U.S. at 843–

44, 104 S.Ct. 2778. These regulations are given controlling weight unless they are "arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844, 104 S.Ct. 2778. If the legislative delegation is implicit, "a court may not substitute its own construction of a statutory provision for a reasonable interpretation made by the administrator of an agency." *Id.*

## IV. EXAMINATION OF THE FMLA REGULATIONS

■ Congress has not spoken directly on the question of whether an employer must notify an employee that the employee's leave is FMLA leave. This Court concludes that the Act is unclear as to how or whether an employer advises an employee of his or her rights to leave, pursuant to the FMLA. In light of this Court's conclusion that the regulatory requirement that an employer notify an employee that the employee's leave is FMLA leave is proper, this Court must determine if the regulation properly penalizes the employer if the employer fails to do so. *Id.*

CBRE petitions this Court to adopt the rationale of the Eighth and Eleventh Circuits in arguing that 29 C.F.R. §§ 825.208 and .700 are invalid. *Ragsdale v. Wolverine Worldwide, Inc.,* 218 F.3d 933, 937 (8th Cir.2000) *cert. granted* —— U.S. ——, 121 S.Ct. 2548, 150 L.Ed.2d 716 (2001); *McGregor v. Autozone, Inc.,* 180 F.3d 1305, 1307–1308 (11th Cir.1999). In *McGregor,* the Eleventh Circuit first noted that the FMLA does not, on its face, require that an employer provide an employee with notice when leave time counts as FMLA leave. 180 F.3d at 1307. The Circuit next made an analytical jump and determined that 29 C.F.R. §§ 825.208 and .700 artificially extended the length of time to which an employee is entitled to leave. *Id.* at 1308. Rather than exploring the intent of Congress in passing the FMLA

and the potential that the Act implicitly left a gap as to how an employer calculated FMLA leave eligibility or advised an employee of the FMLA leave time to which s/he was entitled, the *McGregor* court declared—without extensive discussion—that the regulation was not supported by the text of the Act. *Id.*

The *McGregor* court did not consider the purpose behind the notice requirements or how the purpose of the regulation might dovetail with the intent of the overall statutory scheme. The *McGregor* court merely pointed out that one of the explicit purposes of the FMLA is to "balance the demands of the workplace with the needs of families ... in a manner that accommodates the legitimate interests of employers." *Id.* (quoting 29 U.S.C. § 2601(b)).

The Eighth Circuit provided a similarly flawed analysis. *Ragsdale*, 218 F.3d at 937–38. In *Ragsdale*, the Circuit Court focused on the fact that the 12 week period of time laid out in the FMLA was a carefully crafted compromise by Congress to balance the family needs of employees with the business needs of employers. *Id.* at 939. The Eighth Circuit stated that the regulations "dispense[d] with any pretense of balancing in favor of rigid and unnecessary regulations that penalize[d] *unwary* employers." *Id.* (emphasis added). In so stating, the Circuit's evaluation was diametrically opposed to the rationale of the *Routes* court, which stated that "when an employee who is eligible for the FMLA leave notifies his or her employer of the need to take leave for a qualifying reason, the FMLA places the risk of ignorance on the employer." *Routes*, 58 F.Supp.2d at 980.

The *Ragsdale* Court failed to explain fully how the regulations' notice requirements destroy the balance between employee and employer. Indeed, the Court

appeared willfully blind to the advantage held by the employer in being intimately familiar with its own leave policy and the manner in which that policy complimented the FMLA requirements. If the regulations had mandated that the 12 week period should be increased in all circumstances, then it would also contradict the statute. If the regulations had extended the 12 week period if the employer did not take some burdensome or costly action, then it would also contradict the statute. However, all that the regulations require is that an employee be notified that his/her leave is FMLA leave before such leave commences. This requirement does not place any sizeable burden or cost upon employers and does not destroy the FMLA's carefully crafted balance. In fact, the regulations require employers to perform an incredibly simple action.

Construing all allegations in the complaint as true and viewing those allegations in the light most favorable to the non-movant, as the Court must on a motion to dismiss, *Gomez v. Toledo*, 446 U.S. 635, 636 n. 3, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980); *Robb v. City of Philadelphia*, 733 F.2d 286, 290 (3d Cir.1984); *King v. Port Auth. of N.Y. and N.J.*, 909 F.Supp. 938, 941 (D.N.J.1995), it seems clear that the FMLA supports requiring that an employer prospectively identify leave time as FMLA time. This conclusion is especially appropriate when an employer maintains a leave program that may allow an employee more leave time than statutorily mandated, as is the case in the instant matter.

■ By requiring that employers post a notice informing their employees of important provisions of the FMLA, it is clear that the intent of the FMLA is not just to allow employees 12 weeks of leave, but also to allow employees to make informed decisions about taking that leave. 29 U.S.C. § 2619. Similarly, the purpose of

the regulations enacted by the DOL is not to give employees longer periods of leave than those called for in the FMLA. Rather, it appears to this Court that the purpose of those regulations is to ensure that employers allow their employees to make informed decisions about leave. Consequently, when an employer complies with the FMLA, and gives its employees the information needed to make a decision about leave, the regulations do not require the employer to grant any more leave than the 12 weeks mandated by the FMLA. The overall intent of the FMLA is lost when an employer fails to provide an employee with the opportunity to make informed decisions about her leave options and limitations. Without such an opportunity, the employee has not received the statutory benefit of taking necessary leave with the reassurance that her employment, under proscribed conditions, will be waiting for her when she is able to return to work.

The instant case illustrates why these regulations are necessary to ensure that employees are protected by the FMLA. According to the Complaint CBRE did not provide Nusbaum with their "Medical Leave of Absence Policy" until after Nusbaum was fired. Nusbaum was, therefore, not given the proper information that would have allowed her to structure her leave in a way that would have left her protected by the FMLA. It is quite possible that Nusbaum and her doctor would have structured her leave differently had they known she was only allowed to take 12 weeks of leave. Instead, Nusbaum was given no information about how long she was allowed to take off and was then fired.

Nusbaum's experience, if proven, demonstrates the basic concerns partially outlined in the FMLA and more fully fleshed out in the supporting regulations. Indeed, in several places, the FMLA specifically notes notice requirements for employers and employees. Specifically, Nusbaum was responsible for notifying CBRE of the need for her leave, pursuant to 29 U.S.C. § 2613. Although she had no idea of this requirement, Nusbaum acted accordingly. The FMLA also required that CBRE notify Nusbaum if her absences would cause an economic hardship such that CBRE could not hold her position for her. 29 U.S.C. § 2614(b)(1).[6]

While CBRE, the Eighth Circuit, and the Eleventh Circuit view these two provisions as conclusive evidence that the FMLA left no room for additional notice requirements in regulatory provisions, those Courts and CBRE ignore a basic assumption implicit in the FMLA. At each instance in which a determination must be made as to an employee's eligibility and how an employer must accommodate an employee's leave with an employer's preexisting leave of absence scheme, the FMLA presumes that an employer is in the best position to determine what avenues an employee must follow.

For example, when considering whether the employee is eligible for leave, the

---

**6.** (1) An employer may deny restoration ... to any eligible employee described in paragraph (2) if—

(A) such denial is necessary to prevent substantial and grievous economic injury to the operations of the employer;

(B) the employer notifies the employee of the intent of the employer to deny restoration on such basis at the time the employer determines that such injury would occur; and

(C) in any case in which the leave has commenced, the employee elects not to return to employment after receiving such notice.

(2) An eligible employee described in paragraph (1) is a salaried eligible employee who is among the highest paid 10 percent of the employees employed by the employer within 75 miles of the facility at which the employee is employed.

FMLA states that the employee must have one-thousand two-hundred fifty (1250) hours of employment in the preceding twelve (12) months. 29 U.S.C. § 2611. Clearly, an employer is in the best position to monitor and verify that an employee meets this basic qualification mandate. Similarly, an employer likely is in the best position to know its own leave policy and how that policy may dovetail with its own disability program or other forms of assistance available from the State. Indeed, CBRE had a policy that may have allowed Nusbaum as much as thirty-nine (39) weeks of unpaid leave. The record does not indicate whether any of that time was eligible as paid leave, nor does the record indicate whether CBRE required that Nusbaum exhaust her accumulated vacation and sick days, if any, prior to using FMLA or other available leave time. The record is likely devoid of such information because when Nusbaum requested such information, as alleged in the Complaint CBRE did not accommodate her request.

In the case at bar, CBRE failed to provide Nusbaum with information relevant to her situation as she sought leave to tend to her health. Such a circumstance is specifically what the FMLA sought to avoid. Further, the overall scheme of the FMLA clearly anticipates that an employer will be in the best position to advise its employees about its own leave policy and how that policy functions along with or extends the requirements of the FMLA. To this end, the FMLA left some ambiguity as to how an employer and employee might work together to ensure that all parties' needs were met, as well as to ensure that the employer's policy, if more expansive than the requirements of the FMLA, did not suffer under the weight of the FMLA. The regulations promulgated by the DOL filled these gaps in a reasonable manner consistent with the statutory scheme.

## V. FAILURE TO PROVIDE ACCOMMODATION, PURSUANT TO THE NEW JERSEY LAW AGAINST DISCRIMINATION

CBRE next argues that because it is not obligated to provide indefinite unpaid leave as an accommodation under the NJLAD, Nusbaum fails to articulate a cognizable cause of action under the NJLAD. Defendant builds this argument upon the presumption that the DOL regulations promulgated in support of the FMLA are invalid or exaggerate the scope of Nusbaum's complaint with respect to the accommodation that she was denied. As this Court reads Nusbaum's complaint, however, she asserts a denial of accommodation to the extent that the FMLA provided her with protected status. Additionally, Nusbaum argues that in light of the expansive nature of CBRE's leave policy, above and beyond the leave mandated by the FMLA, CBRE's failure to work with her to determine whether the company could develop an accommodation rises to a violation of the NJLAD. To the extent that she so argues, this court denies CBRE's motion to dismiss.

The Third Circuit recently determined that the NJLAD relies on the same analytical framework as the Americans with Disabilities Act. *McNemar v. The Disney Store, Inc.*, 91 F.3d 610, 618 (3d Cir.1996). Under that framework, a plaintiff must be able to establish that s/he (1) has a "disability," (2) is a "qualified individual," and (3) has suffered an adverse employment action because of a disability.

Nusbaum asserts that to the extent that she was entitled to leave, pursuant to the FMLA and its supporting regulations, she was likewise entitled to accommodation for that leave time, pursuant to NJLAD. Furthermore, Nusbaum argues that aside from the FMLA, CBRE's own leave policy

would have allowed her additional leave time, if needed. Nusbaum couples this assertion with the fact that CBRE did nothing to explore whether Nusbaum could have worked on an augmented schedule or duty.

While CBRE would have this Court read Nusbaum's complaint as an allegation that NJLAD requires "indefinite" leave time, this Court does not read Nusbaum's claim in that manner. Rather, this Court reads Nusbaum's complaint to argue that to the extent that the FMLA entitled her to leave time, the NJLAD provided her with protected status until her leave entitlement lapsed. To conclude otherwise would create tension between the liberal protections of the NJLAD and the FMLA. Of course, this Court recognizes that an accommodation of leave time, the end of which the employer cannot foresee, is not a required accommodation under the NJLAD. However, the accommodation claimed by Nusbaum in her complaint is not such an accommodation. Rather, the accommodation Nusbaum sought was one of a period of time mandated by the FMLA and begun by CBRE advising her that her federally mandated leave had commenced.

At this time, this Court concludes that it is inappropriate to dismiss the instant claim for failure to accommodate Nusbaum's disability. Independent of her protected status under the FMLA, CBRE fails to demonstrate that there is no instance in which Nusbaum could recover for CBRE's failure to accommodate her disability.

## VI. NUSBAUM'S RETALIATION CLAIM

In order to establish a *prima facie* cause of action for retaliation, Nusbaum must show that: (1) she engaged in a protected employee activity; (2) CBRE took an adverse employment action after or contemporaneous with her protected activity; and (3) a causal link exists between her protected activity and CBRE's adverse action. *Morales–Evans v. Admin. Office of the Ct. of the State of N.J.*, 102 F.Supp.2d 577, 590–91 (2000) (quoting *Shaner v. Synthes (USA)*, 204 F.3d 494, 500 (3d Cir. 2000)). In the instant litigation, to the extent that CBRE held some obligation to advise Nusbaum of her rights—pursuant to the FMLA—and accommodate her need for medical leave—pursuant to the FMLA, the NJLAD, and its own expansive leave policy—Nusbaum has pled a *prima facie* cause of action for retaliation.

Nusbaum's complaint clearly alleges that she engaged in a protected activity when she sought a leave of absence from CBRE for medical reasons. She has further alleged that while on medical leave, prior to, or while protected by, the FMLA, CBRE terminated her employment. Finally, Nusbaum alleges that CBRE terminated her employment as a result of her attempt to take advantage of—or her actually taking advantage of—her rights, pursuant to the FMLA and the NJLAD. To the extent that CBRE depends upon the fact that Nusbaum was no longer entitled to leave, either pursuant to the FMLA or the NJLAD, this Court is mindful that Nusbaum may have, nonetheless, received the benefit of CBRE's extended leave policy. That the company terminated Nusbaum's employment without mention or consideration of its own extended policy is troubling, especially in light of the difficulty Nusbaum encountered before leaving CBRE on medical leave.

## CONCLUSION

Based on the foregoing discussion, this Court denies Defendant's motion to dismiss.