NOT PRECEDENTIAL

# UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

_____

No. 15-3128
_____

BARRY BOLES

v.

WAL-MART STORES, INC.,

Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(District Court No.: 2-12-cv-01762)
District Judge: Honorable Madeline C. Arleo

_____

Argued on April 5, 2016

Before: FISHER, RENDELL and BARRY, <u>Circuit Judges</u>

(Opinion filed : May 24, 2016)

Colin M. Page, Esq. (ARGUED)
Berkowitz Lichtstein Kuritsky Giasullo & Gross
75 Livingston Avenue
Roseland, NJ 07068

*Counsel for Appellee*

Mark A. Aronchick, Esq.
Matthew A. Hamermesh, Esq. (ARGUED)
Hangley Aronchick Segal Pudlin & Schiller
One Logan Square
18th & Cherry Streets, 27th Floor
Philadelphia, PA 19103

N. Ari Weisbrot, Esq.
Fox Rothschild
75 Eisenhower Parkway
Suite 200
Roseland, NJ 07068

            *Counsel for Appellant*

O P I N I O N*

**RENDELL**, <u>Circuit Judge</u>:

Appellant Wal-Mart Stores, Inc. ("Wal-Mart") appeals from the District Court's

denial of its post-trial motion for judgment as a matter of law, and challenges the

attorneys' fees and costs award entered by the District Court.  Boles, a former Wal-Mart

employee, filed suit against Wal-Mart after being terminated following a medical leave of

absence.  The jury entered a verdict on Boles's behalf on his retaliation claim and

awarded damages, including punitive damages.  Wal-Mart argues that, as a matter of law,

Boles could not make out his retaliation claim, and that the punitive damage award was

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

2

unsupported. It argues further that the District Court abused its discretion in declining to reduce the attorneys' fees and costs award. We will affirm the District Court in all respects.

## *Facts and Procedural History*

Boles worked for Wal-Mart for many years and was terminated from his position as an assistant store manager after taking medical leave prompted by a leg ulcer. On May 8, 2011, he went to the emergency room after his wife noticed a large blister on his leg. The emergency room physician told Boles to seek further treatment from his personal physician and said he could return to work in two days. The next day, Boles saw Dr. Gail Mautner, a dermatologist. She testified at trial that, at his first visit, Boles presented a large blister and swelling, which progressed into a five to six inch ulcer by his second visit ten days later. On May 10, 2011, Boles's wife faxed two notes to Wal-Mart—one from the emergency room doctor saying Boles could return to work in two days and one from Dr. Mautner saying he could return to work on May 21, 2011. In response, Wal-Mart sent Boles FMLA paperwork required for his leave of absence.

Boles visited Dr. Mautner again on May 20, 2011, and she recommended that he continue to rest. After the May 20th visit, Dr. Mautner faxed a certification to Wal-Mart estimating that Boles would not be able to return to work until "medically discharged from [her] care," which she estimated to be one month. (App. 488). After Wal-Mart had received Dr. Mautner's recommendation, Mike Ciechalski, the store manager, sent an email to Quawad McDonald, the Market Human Resources Manager asking "why we are

3

not terminating [Boles] at this time?" to which McDonald replied, "[t]erminating [Boles] would be a violation of company policy." (App. 718). Wal-Mart continued to pay Boles during his leave.

On July 13, 2011, Wal-Mart placed Boles on unpaid leave because he had not returned the paperwork required to support his leave of absence. Boles submitted the FMLA forms on July 28, 2011. His anticipated start and end dates were June 22, 2011 through September 10, 2011. In his request for leave, Boles included a certificate from Dr. Mautner indicating that he would be unable to return until October/November 2011. McDonald acknowledged receipt of the paperwork and noted in an email that Boles "said that he needed to be out until November 2011." (App. 722).

Wal-Mart approved Boles's leave until September 29, 2011. On October 3, after the alleged expiration of Boles's leave, Boles sent a text message to McDonald about his father's recent death and informed McDonald that he would return to work once his doctor released him. McDonald acknowledged at trial that he received a text message from Boles around this time. McDonald testified that Wal-Mart called Boles in September and October; however, Boles's phone records revealed that he did not receive any phone calls from Wal-Mart during this time.

Boles returned to the store on October 24, 2011, the date Dr. Mautner cleared him for work, and discovered he could not log onto his computer. Ciechalski instructed Boles to call McDonald to discuss the issue. McDonald ignored Boles's numerous phone calls, despite claiming at trial that Boles was a valued team member and someone whom he

4

liked.  Around October 29th, Boles received a termination letter dated October 27, 2011 notifying him that he had been terminated as of October 25, 2011 (the day after he attempted to return to work) for "failure to return" to work.  (App. 721).

Boles filed a complaint against Wal-Mart in New Jersey Superior Court on February 3, 2012.  Defendant removed his action to the District Court, where Boles filed an amended complaint.  His amended complaint asserted four claims: (1) retaliation for requesting to take extended medical leave, in violation of New Jersey Law Against Discrimination, N.J. Stat Ann. § 10:5-1 *et seq.* ("NJLAD"); (2) disability discrimination in violation of NJLAD; (3) failure to provide a reasonable accommodation in violation of NJLAD; and (4) interference with his rights under the federal FMLA.  The District Court granted summary judgment in favor of Wal-Mart as to Boles's disability discrimination claim and Boles's claim for failure to accommodate to the extent that it rested on a Wal-Mart's failure to engage in an interactive process.

Trial on the remaining claims was held March 24–31, 2015.  Boles withdrew his FMLA claim and presented two claims to the jury: (1) retaliation and (2) failure to accommodate based on refusing to grant extended leave.  Wal-Mart made a motion pursuant to Rule 50 of the Federal Rules of Civil Procedure, seeking judgment as a matter of law on both claims.  The District Court denied Wal-Mart's motion and allowed both claims to go to the jury.  Boles prevailed on his retaliation claim.  The jury awarded $130,000 in back pay, no front pay, and $10,000 in emotional distress damages.  The jury also awarded $60,000 in punitive damages.

Following trial, Boles filed a motion for attorneys' fees and costs. Wal-Mart opposed the fee motion and filed a renewed motion for judgment as a matter of law. The District Court granted plaintiff's motion for attorneys' fees and costs and denied Wal-Mart's motion for judgment as a matter of law.

### *Wal-Mart's Motion for Judgment as a Matter of Law*[1]

The District Court properly denied Wal-Mart's Motion for Judgment as a Matter of Law as to both the retaliation claim and the challenge to the punitive damages award. We exercise plenary review over a district court's decision with respect to judgment as a matter of law. *Toledo Mack Sales & Serv., Inc. v. Mack Trucks, Inc.*, 530 F.3d 204, 209 (3d Cir. 2008). We apply the same standard as the District Court. *Galena v. Leone*, 638 F.3d 186, 196 (3d Cir. 2011). "A judgment notwithstanding the verdict may be granted under Fed.R.Civ.P. 50(b) only if, as a matter of law, the record is critically deficient of that minimum quantity of evidence from which a jury might reasonably afford relief." *In re Lemington Home for the Aged*, 777 F.3d 620, 626 (3d Cir. 2015) (alterations omitted) (quoting *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 249 (3d Cir. 2001)).

*First*, the District Court correctly concluded that there was sufficient evidence in the record for a reasonable jury to find in favor of Boles on his retaliation claim. The

---

[1] The District Court had jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1332. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

6

prima facie elements for a retaliation claim under the NJLAD are: "(1) plaintiff was in a protected class; (2) plaintiff engaged in protected activity known to the employer; (3) plaintiff was thereafter subjected to an adverse employment consequence; and (4) there is a causal link between the protected activity and the adverse employment consequence." *Victor v. State*, 203 N.J. 383, 409 (2010). As the District Court noted, only the second and fourth factors are in dispute.

Wal-Mart argues on appeal that Boles requested indefinite leave and thus had not engaged in a protected activity under the statute. It is unquestionable, however, that "taking a disability/medical leave is protected by the NJLAD." *Yobe v. Renaissance Elec., Inc.*, No. CV 15-3121(FLW), 2016 WL 614425, at *3 (D.N.J. Feb. 16, 2016); *see also Nusbaum v. CB Richard Ellis, Inc.*, 171 F. Supp. 2d 377, 388 (D.N.J. 2001) ("[Plaintiff's] complaint clearly alleges that she engaged in a protected activity when she sought a leave of absence from [her employer] for medical reasons."). Thus, the District Court aptly concluded that "[t]he evidence at trial supported a finding that [Boles] engaged in a protected activity, i.e., taking leave, and was retaliated against, i.e., terminated, for engaging in that activity." *Boles v. Wal-Mart Stores, Inc.*, No. CIV.A. 12-1762, 2015 WL 4653233, at *2 (D.N.J. Aug. 5, 2015). There is support for the contention that indefinite leave cannot be a reasonable accommodation, as Wal-Mart argues, but Wal-Mart cites no authority to support that what amounts to a "reasonable

7

accommodation" by an employer is controlling as to what can be considered a "protected activity" by the employee. Indeed, they are separate claims.[2]

The District Court also properly rejected Wal-Mart's argument that Boles could not show causation or pretext. Internal Wal-Mart emails discussed whether Boles could be terminated for taking leave, and his termination date for "job abandonment" was after Boles attempted to return to work. Thus, the District Court held that temporal and other circumstantial evidence constituted sufficient evidence for the jury to find a causal link between Boles's taking leave and his termination. The District Court similarly reasoned that the internal Wal-Mart emails, termination letter, Boles's attempts to communicate with Wal-Mart, and other evidence prevented it from concluding, as a matter of law, that Boles had not set forth evidence of pretext.

*Second*, the District Court properly rejected Wal-Mart's challenge to the jury's punitive damages award. Two requirements must be satisfied to award punitive damages under the NJLAD: (1) upper management's actual participation in, or willful indifference to, the wrongful conduct; and (2) evidence that the wrongful conduct is especially egregious. *See Cavuoti v. N.J. Transit Corp.*, 161 N.J. 107, 113 (1999). The District Court concluded that Mike Ciechalski and Quawad McDonald met the definition of second-tier upper management because they were responsible for implementing policies and that there was evidence of egregious conduct to support the jury's punitive damages

---

[2] The District Court also rejected the argument, raised also before us on appeal, that Boles "abused" his leave, saying that a reasonable jury could have found that Boles did not abuse his leave.

award.  McDonald and Ciechalski were responsible for administering and ensuring compliance with Wal-Mart's policies and running the store, respectively.  Further, as described by the District Court, there was evidence in the record that supported the jury's finding of egregious conduct, including:

> [Boles's] attempt to contact his supervisors and others at Wal-Mart to no avail; that Wal-Mart never told [Boles] that if he did not return by September 10, he would be fired; that [Boles] continued to be paid and communicate with [Wal-Mart's] employees after September 10; that he actually returned to work but was sent home and fired the next day for "job abandonment"; and that the termination decision was made by a supervisor to whom [Boles] had spoken [to] just weeks earlier about his return.

*Boles*, 2015 WL 4653233, at \*4.  Further, McDonald testified that Wal-Mart called Boles in September and October; however, Boles's phone records do not show any calls from Wal-Mart.  McDonald, who claimed to have wanted to "help [Boles] out," also ignored Boles's numerous phone calls.  (App. 517, 531-32, 566-67).  Thus, we cannot conclude, as a matter of law, that the jury could not have awarded punitive damages.

### *Boles's Motion for Attorneys' Fees and Costs*

The District Court awarded reasonable attorneys' and costs fees, given Boles's success at trial.  We "review the reasonableness of an award of attorney's fees for an abuse of discretion."  *Rode v. Dellarciprete*, 892 F.2d 1177, 1182 (3d Cir. 1990).  Under the NJLAD, "the prevailing party may be awarded a reasonable attorney's fee as part of the cost."  N.J.S.A § 10:5-27.1.  A party "prevailed" if he "succeed[ed] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."

9

*Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (interpreting 42 U.S.C. § 1988, which uses the same wording as the NJLAD's fee-shifting provision). Attorneys' fees and costs awards begin with a calculation of the "lodestar" amount, which is determined by multiplying a reasonable rate by the number of hours reasonably expended on the litigation. *Id.* New Jersey law also requires the lodestar amount to "reflect the risk of nonpayment" in contingency fee cases. *Rendine v. Pantzer*, 141 N.J. 292, 327 (1995). The District Court concluded that Boles was a prevailing party entitled to attorneys' fees because he was awarded $200,000 as a result of a successful retaliation claim under the NJLAD. We agree.

Wal-Mart argues on appeal that the District Court should have reduced the lodestar amount by 80% since Boles prevailed on only one of his claims. We cannot agree. The District Court properly stated, when a plaintiff achieves "excellent results" his attorney should recover "a fully compensatory fee," but if he obtains "only partial or limited success," a lodestar amount based on the entire litigation may be excessive. *Hensley*, 461 U.S. at 435–36. Thus, the District Court asked whether (1) "the unsuccessful claims were unrelated to the successful claims," and (2) if the plaintiff "achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award." *Blakey v. Cont'l Airlines, Inc.*, 2 F. Supp. 2d 598, 605 (D.N.J. 1998) (citing *Hensley*, 461 U.S. at 434). It properly concluded that Boles's claims revolved around the same events, witnesses, and facts, and this work cannot be

separated out by claim. It also concluded that Boles achieved overall success because he was awarded back pay, emotional distress damages, and punitive damages.

That the award Boles received was less than desired is not determinative. *See Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1042–43 (3d Cir. 1996) ("the district court cannot adjust counsel fees to maintain a certain ratio between the fees and damages[;]" rather "the amount awarded in counsel fees should reflect the extent to which the litigant was successful"). Ultimately, district courts have discretion in evaluating attorneys' fees award. *Hensley*, 461 U.S. at 436–37 ("The district court may attempt to identify specific hours that should be eliminated [because of limited success], or it may simply reduce the award to account for the limited success. The court necessarily has discretion in making this equitable judgment."). Here, the District Court did not abuse that discretion.

### *Conclusion*

For the foregoing reasons, we affirm the order of the District Court.

11