

2004 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-13-2004

# Conoshenti v. Pub Ser Elec & Gas

Precedential or Non-Precedential: Precedential

Docket No. 03-2257

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2004

Recommended Citation

"Conoshenti v. Pub Ser Elec & Gas" (2004). *2004 Decisions.* Paper 748.
http://digitalcommons.law.villanova.edu/thirdcircuit_2004/748

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2004 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

IN THE UNITED STATES COURT
OF APPEALS
FOR THE THIRD CIRCUIT
_____

NO. 03-2257
_____

RICHARD CONOSHENTI
Appellant

v.

PUBLIC SERVICE ELECTRIC
& GAS COMPANY
_____

On Appeal From the United States
District Court
For the District of New Jersey
(D.C. Civil Action No. 01-cv-04611)
District Judge:  Hon. Joseph A.
Greenaway, Jr.
_____

Argued January 26, 2004

BEFORE:  NYGAARD, FUENTES
and STAPLETON, Circuit Judges
_____

(Opinion Filed: April 13, 2004)
_____

Gerald J. Resnick (Argued)
Andrea Rachiele
Deutsch & Resnick
One University Plaza - Suite 305
Hackensack, NJ  07601

Attorneys for Appellant

Patrick Westerkamp (Argued)
Public Service Electric &
 Gas Company
80 Park Plaza – T5E
Newark, NJ  07101-0570
 Attorney for Appellee

_____

OPINION OF THE COURT
_____

STAPLETON, Circuit Judge:

   Appellant Richard Conoshenti alleges that his employment with Public Service Electric and Gas Company ("PSE&G") was terminated in violation of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 *et seq.*, ("FMLA"), New Jersey public policy under *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72, 417 A.2d 505, 512 (N.J. 1980), and the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-1 *et seq.*, ("NJLAD"). The District Court granted summary judgment in favor of PSE&G on all of Conoshenti's claims.  We will reverse the District Court's judgment with respect to Conoshenti's FMLA claim and remand for further proceedings.  We will affirm, however, the District Court's judgment with respect to Conoshenti's *Pierce* and NJLAD claims.

   I.  Facts and Procedural History

   Richard Conoshenti was employed as a First Grade Mechanic with PSE&G since

1972. In April and May 1999, PSE&G accused him of keeping inaccurate time records and leaving his shift early to take a shower. Conoshenti denied keeping inaccurate records, claiming that he was merely engaged in the accepted practice of correcting times that were inappropriately recorded. As for leaving his shift early, Conoshenti claimed that he had been working with chemicals that irritated his skin, and that a shower was necessary. Nevertheless, on May 21, 1999, PSE&G made a decision to discharge him for these violations of company policy.

Upon the advice of Conoshenti's union, and because he was willing to accept blame to keep his job,[1] he agreed to enter into a Last Chance Agreement ("LCA"). Under the LCA, PSE&G agreed that Conoshenti would be reinstated, conditioned upon his satisfactory performance of each of the obligations outlined in a letter dated August 10, 1999. These obligations included: taking and passing a physical examination, reporting to work every day and on time, maintaining satisfactory work performance, and maintaining a clean safety record. Conoshenti understood that if he were to violate any of these requirements, such violation would automatically constitute just cause for his immediate discharge.

From August 10, 1999, the date he

entered into the LCA, to December 3, 1999, Conoshenti performed each of his obligations and was not warned, reprimanded, or fired for any improper conduct. On December 4, 1999, however, while outside the scope of his employment, Conoshenti was struck by an automobile and sustained a serious injury that required hospitalization. Shortly thereafter, on December 6, 1999, Conoshenti informed his boss at PSE&G of his accident and the seriousness of his injuries. He also informed his boss that his physician had indicated that he would need to be out of work for at least two weeks in order to recover.[2] PSE&G did not notify Conoshenti at that time, or at any time thereafter, of his rights under the FMLA.[3]

---

[1] Conoshenti continues to dispute, however, the truth of the PSE&G's charges.

[2] Additionally, the record indicates that on December 8, 1999, PSE&G received a note from Conoshenti's physician, Dr. Edward A. Somma, dated December 6th, indicating that Conoshenti would require fourteen days of bedrest and medication and that he could return to work on December 20, 1999. App. at 233a-34a.

[3] During proceedings in the District Court, PSE&G had claimed that it informed Conoshenti of his rights under the FMLA by letter dated December 15, 1999. Conoshenti claimed never to have received that letter. At oral argument on the parties' cross-motions for summary judgment, however, PSE&G accepted, for purposes of summary judgment, that no notice had been sent to Conoshenti on December 15, 1999 or at any other time. PSE&G also stipulated for purposes of this

2

In particular, Conoshenti was not told that he was entitled, under the FMLA, to twelve weeks of protected leave. He was also not told that the leave he was using would be considered FMLA leave.

On December 16, 1999, Conoshenti met with an orthopedic surgeon, Dr. Alexander P. Russoniello, who diagnosed him with torn rotator cuffs and recommended immediate surgery. The surgery was scheduled for early January 2000. Conoshenti notified PSE&G of his plan to undergo the surgery and was told to take time to recuperate. On December 17th, he sent PSE&G a form completed by Dr. Russoniello that indicated his diagnosis and that he would be unable to work until approximately April 2000.

Thereafter, on or about December 20, 1999, PSE&G began administrative steps to end Conoshenti's employment for violating the LCA. These steps included the preparation of a Recommendation for Disciplinary Action, which recommended that Conoshenti be discharged because he "was unavailable for work on 12/6/99 and the following 9 work days, a violation of his 'Last Chance Agreement.'" App. at 236a. The recommendation was approved by several PSE&G officers on December 20th, but no action was taken. PSE&G also drafted a termination letter, dated

December 20th, that cited Conoshenti's absence on December 6th and the subsequent ten days as the reason for his discharge. App. at 237a. This letter, however, was not signed and was never sent.

Meanwhile, Conoshenti had become concerned about his job security and therefore contacted his union to determine what he needed to do to protect himself. The union advised him to notify PSE&G that he desired to have his leave counted as FMLA leave. Following this advice, Conoshenti, on December 27, 1999, sent a letter to his direct supervisor at PSE&G, Bob Wasser, stating:

> I would like to request an immediate leave under the Family and Medical Leave Act. I am requesting this leave due to the fact that I was in an accident on December 4, 1999. If I can provide any other information or doctor notification I would appreciate contact from the company.

App. at 73a. That same day, Wasser made the following handwritten notation:

> Conoshenti called and stated that he wanted a "family medical leave." I responded by saying that I would research it for him and call him back.
>
> [I] called J. Tiberi[4] and discussed. Initially the discharge was to be executed through the mail, effective

---

appeal that "a letter dated December 15, 1999 (238a - 240a) was neither sent by PSE&G, nor received by Mr. Conoshenti. (358a - 359a)." Appellee's Br. at 6 n.4.

[4]J. Tiberi was the signatory for PSE&G on the LCA.

3

1-01-00[.]  [W]hen I mentioned "family leave" Tiberi said he would call [redacted]. Tiberi paged me ½ hour later. I called and was informed by Tiberi that we must hold off on the discharge, because: He is entitled to benefits while he is on disability. It is against the law to discharge under these conditions. Tiberi said that he will be discharged upon his return to work 1st day back.

App. at 246a. Conoshenti then underwent surgery for his torn rotator cuff in early January 2000. Thereafter, Conoshenti's doctors periodically updated PSE&G on his condition. Conoshenti claimed that throughout his recovery, he was told by several different people at PSE&G, including Wasser, to take his time recovering and to not hurry back until he was "100%." App. at 294a, 295a. Conoshenti also claimed that he was assured that "light duty" would be available to him when he was able to return to work. App. at 295a.

On March 28, 2000, Dr. Russoniello authorized Conoshenti to return to work for "desk duty" as of April 3, 2000, and Conoshenti, in turn, notified PSE&G of his ability to return to work. PSE&G informed him, however, that the facility where he worked could not accommodate desk duty and that his return to work would have to be delayed until his doctor cleared him for full active manual labor. In April 2000, Conoshenti's doctor authorized his return to unrestricted work duty. On April 12, 2000, Conoshenti took and passed a physical examination required by PSE&G. It was Conoshenti's understanding that passing the physical examination was the only condition placed on his returning to work. Also on April 12, 1999, PSE&G reinitiated administrative steps to end Conoshenti's employment for violation of the LCA. On April 17, 1999, Conoshenti reported for work. After one hour on the job, however, he was called into his supervisor's office and told he was being terminated for violation of the LCA. The termination letter stated, in part:

On December 6, 1999, you were unable to report to work as a result of being involved in a motor vehicle accident. Subsequently, you were out of work for 92 days, a violation of the terms and conditions of your "Last Chance Agreement." As a result of your failure to comply with the terms and conditions of this agreement, your employment with Public Service Electric and Gas Company is being terminated April 17, 2000.

App. at 269a.

It is undisputed that Conoshenti's absence from work exceeded the twelve weeks of leave that are protected by the FMLA. If Conoshenti's protected leave were considered to have begun on December 6, 1999, the twelve week period would have expired on March 1, 2000. Even if the twelve week period were considered to have begun on December 27, 1999, the protected period would have expired on March 19, 2000.

After his discharge, Conoshenti and his union filed a grievance and the case was arbitrated pursuant to the LCA. Although the arbitrator noted that the LCA was very stringent and possibly even "draconian," he nevertheless found that Conoshenti had violated its terms and therefore denied the grievance.

Conoshenti then filed a complaint against PSE&G in the Superior Court of New Jersey, Union County. Counts One and Two of the complaint alleged violations of NJLAD. Count Three alleged that Conoshenti had been wrongfully discharged in violation of public policy under *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 72, 417 A.2d 505, 512 (N.J. 1980). Count Four alleged violations of the FMLA. PSE&G removed the case to the United States District Court for the District of New Jersey.

Conoshenti and PSE&G filed cross-motions for summary judgment. The District Court granted summary judgment in favor of PSE&G on all of Conoshenti's claims. This timely notice of appeal followed.[5]

---

[5]The District Court had jurisdiction under 28 U.S.C. § 1331 (2001) because the case involved a federal question, and removal was proper under 28 U.S.C. § 1441(b) (2001). The District Court had supplemental jurisdiction over the New Jersey state law claims under 28 U.S.C. § 1367 (2001). We have jurisdiction over this appeal pursuant to 28 U.S.C. § 1291

## II. Discussion

Conoshenti argues that the District Court erred in granting PSE&G's motion for summary judgment and denying his own motion for summary judgment. We review the District Court's grant of summary judgment *de novo*. *American Medical Imaging Corp. v. St. Paul Fire & Marine Ins. Co.*, 949 F.2d 690, 692 (3d Cir.1991). Summary judgment is appropriate if there are no genuine issues of material fact presented and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Wisniewski v. Johns-Manville Corp.*, 812 F.2d 81, 83 (3d Cir. 1987). In determining whether a genuine issue of fact exists, we resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Suders v. Easton*, 325 F.3d 432, 435 n.2 (3d Cir. 2003). "Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by ''showing'' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." *Singletary v. Pennsylvania Dept. of Corrections*, 266 F.3d 186, 192 n.2 (3d Cir. 2001) (quoting *Celotex*, 477

---

(2001) because the District Court's order granting summary judgment to PSE&G on all claims was a final decision.

5

U.S. at 325).

A. Family and Medical Leave Act Claims

The stated purposes of the FMLA are to "balance the demands of the workplace with the needs of families" and "to entitle employees to take reasonable leave for medical reasons." 29 U.S.C. § 2601(b)(1) and (2). The FMLA seeks to accomplish these purposes "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(3). In furtherance of these objectives, the FMLA requires that "an eligible employee shall be entitled to a total of twelve workweeks of leave during any twelve month period" if the employee has a "serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D).[6] After an eligible

employee returns from an FMLA leave, the employee is entitled to be reinstated to his or her former position, or an equivalent one. 29 U.S.C. § 2614(a)(1). This right to reinstatement is qualified by a statutory directive that it does not entitle a restored employee to a right, benefit or position to which the employee would not "have been entitled had the employee not taken the leave." 29 U.S.C. § 2614(a)(3)(B). Thus, for example, if an employee is discharged during or at the end of a protected leave for a reason unrelated to the leave, there is no right to reinstatement. 29 C.F.R. § 825.216(a)(1).

In order to protect these substantive rights, the FMLA proscribes an employer from engaging in certain acts. *See* 29 U.S.C. § 2615. Section 2615(a)(1) makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." Section 2615(a)(2) makes it "unlawful for any employer to

---

[6]"The term 'eligible employee' means an employee who has been employed – (i) for at least 12 months by the employer with respect to whom leave is requested under section 2612 of this title; and (ii) for at least 1,250 hours of service with such employer during the previous 12-month period." 29 U.S.C. § 2611(2)(A). "The term 'serious health condition' means an illness, injury, impairment, or physical or mental condition that involves – (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." 29 U.S.C. § 2611(11). When an eligible employee needs to take FMLA leave that was not foreseeable, "[t]he

employee need not expressly assert rights under the FMLA or even mention the FMLA"; rather the employee need only notify the employer that leave is needed. 29 C.F.R. § 825.303(b).

In this case, there is no dispute that Conoshenti was an eligible employee or that his injury qualified as a serious health condition. Moreover, as the District Court noted, it is undisputed that Conoshenti fulfilled his duty to notify under the FMLA by informing PSE&G of his injury and need for time off within two days of his accident.

discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." Finally, § 2615(b) provides that "[i]t shall be unlawful for any person to discharge or in any other manner discriminate against any individual because such individual – (1) has filed any charge, or has instituted or caused to be instituted any proceeding, under or related to this subchapter; (2) has given, or is about to give, any information in connection with any inquiry or proceeding relating to any right provided under this subchapter; or (3) has testified, or is about to testify, in any inquiry or proceeding relating to any right provided under this subchapter." The FMLA grants employees a cause of action against employers who violate § 2615. *See* 29 U.S.C. § 2617.

In addition, the United States Department of Labor ("DOL") has promulgated regulations implementing the FMLA, as authorized by 29 U.S.C. § 2654. Of particular significance here, § 825.220(c) of those regulations provides:

> An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as

hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies.

29 C.F.R. § 825.220(c). The DOL's regulations also provide that "[a]ny violations of the [FMLA] or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act." 29 C.F.R. § 825.220(b). "'Interfering with' the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA." 29 C.F.R. § 825.220(b). Moreover, "[e]mployees cannot waive, nor may employers induce employees to waive, their rights under FMLA." 29 C.F.R. § 825.220(d).

Finally, the DOL's regulations impose upon the employer obligations to communicate with employees regarding their rights under the FMLA. In particular, the regulations require employers to provide employees with individualized notice of their FMLA rights and obligations. Pursuant to 29 C.F.R. § 825.208(a), "[i]n all circumstances, it is the employer's responsibility to designate leave, paid or unpaid, as FMLA-qualifying, and to give notice of the designation to the employee . . . ." If an employer provides employees with a handbook concerning employee benefits, "the handbook must incorporate information on FMLA rights and

7

responsibilities and the employer's policies regarding the FMLA." 29 C.F.R. § 825.301(a)(1). If the employer does not provide such a handbook, such information must be provided when an employee requests leave. 29 C.F.R. § 825.301(a)(2). Moreover, each time the employee requests leave, the employer must, within a reasonable time thereafter – "one or two business days if feasible," "provide the employee with written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations." 29 C.F.R. § 825.301(b)(1), (c). This specific notice must include, among other things, whether "the leave will be counted against the employee's annual FMLA leave entitlement," 29 C.F.R. § 825.301(b)(1)(i), and "the employee's right to restoration to the same or equivalent job upon return from leave," 29 C.F.R. § 825.301(b)(1)(vii). Neither party in this case has challenged the validity of these regulations.

There are two arrows to Conoshenti's FMLA bow. He insists that the District Court erred in granting summary judgment against him because (1) PSE&G failed to advise him of his FMLA rights and thereby interfered with his ability to meaningfully exercise his right to an FMLA leave; and (2) PSE&G "use[d] the taking of FMLA leave as a negative factor in" its decision to discharge him on April 17, 2000. 29 C.F.R. § 825.220(c). We will address each of these independent theories of liability in turn.

### 1. The Failure to Advise Claim

Conoshenti argues that PSE&G's failure to advise him of his right to twelve weeks of FMLA leave, after he properly gave notice of his serious health condition, constituted an interference with his FMLA right to that protected leave. Had he received the advice PSE&G was obliged to provide, Conoshenti insists, he would have been able to make an informed decision about structuring his leave and would have structured it, and his plan of recovery, in such a way as to preserve the job protection afforded by the Act. We conclude that this is a viable theory of recovery and that the District Court accordingly erred in granting summary judgment on it against Conoshenti.

As we have noted, the parties stipulated in the District Court that, for purposes of summary judgment, PSE&G did not advise Conoshenti of his rights under the FMLA. As we have also noted, the regulation under the FMLA imposed a duty on PSE&G to do so. It follows, we believe, that Conoshenti will show an interference with his right to leave under the FMLA, within the meaning of 29 U.S.C. § 2615(a)(1), if he is able to establish that this failure to advise rendered him unable to exercise that right in a meaningful way, thereby causing injury. Neither PSE&G in its brief nor the District Court in its opinion contest the theoretical basis for this claim, and we believe that basis is supported by the relatively sparse authority relevant to the issue.

In *Ragsdale v. Wolverine World Wide,*

8

*Inc.*, 535 U.S. 81 (2002), the Supreme Court had before it the FMLA regulations requiring an employer to advise employees of FMLA rights. It was called upon to determine the validity of a regulation, 29 C.F.R. § 825.770(a),[7] which imposed a penalty on an employer who failed to advise that a leave taken by an employee would count against her FMLA entitlement. Under this regulation, the twelve week FMLA leave did not commence until this advice was given. In Ms. Ragsdale's case, this would have entitled her to 30 weeks of leave, even though she could not show that she was in any way prejudiced by the employer's breach of duty. The Court struck down this penalty provision, noting that it was "unconnected to any prejudice the employee might have suffered from the employer's lapse" and, accordingly, "incompatible with the FMLA's comprehensive remedial mechanism" which affords no relief absent prejudice from a statutory violation. *Ragsdale*, 535 U.S. at 88-89.

The *Ragsdale* Court expressly noted that the validity of notice requirements of the regulations themselves was not before it. Accordingly, *Ragsdale* is not dispositive of anything before us. It is helpful, however, because the Court found "reasonable" Ragsdale's suggestion that a failure to advise of FMLA rights could constitute an interference with "an employee's exercise of basic FMLA rights in violation of § 2615":

> Section 825.700(a), Ragsdale contends, reflects the Secretary's understanding that an employer's failure to comply with the designation requirement might sometimes burden an employee's exercise of basic FMLA rights in violation of § 2615. Consider, for instance, the right under § 2612(b)(1) to take intermittent leave when medically necessary. An employee who undergoes cancer treatments every other week over the course of 12 weeks might want to work during the off weeks, earning a paycheck and saving six weeks for later. If she is not informed that her absence qualifies as FMLA leave – and if she does not know of her right under the statute to take intermittent leave – she might take all 12 of her FMLA-guaranteed weeks consecutively and have no leave remaining for some future emergency. In circumstances like these, Ragsdale argues, the employer's failure to give the notice required by the regulation could be said to "deny," "restrain," or "interfere with" the employee's exercise of her right to take intermittent leave.
>
> This position may be reasonable, but

---

[7]Section 825.770(a) provided, in part:

> If an employee takes paid or unpaid leave and the employer does not designate the leave as FMLA leave, the leave taken does not count against an employee's FMLA entitlement.

9

the more extreme one embodied in § 825.700(a) is not. . . . [It] establishes an irrebuttable presumption that the employee's exercise of FMLA rights was impaired – and that the employee deserves 12 more weeks. There is no empirical or logical basis for this presumption, as the facts of this case well demonstrate. Ragsdale has not shown that she would have taken less leave or intermittent leave if she had received the required notice.

*Ragsdale*, 535 U.S. at 89-90. This portion of the *Ragsdale* opinion, together with our own assessment of the reasonableness of the notice regulations, persuades us that the Supreme Court would find an actionable "interference" in violation of § 2615(a) here in the event Conoshenti is able to show prejudice as a result of that violation.

The District Court from which this appeal comes to us has previously endorsed the theory of recovery Conoshenti advances here. In *Nusbaum v. CB Richard Ellis, Inc.*, 171 F. Supp. 2d 377, 379-80 (D.N.J. 2001), after plaintiff Margot Nusbaum learned that she required back surgery, she requested that her employer allow her to take medical leave and also requested information regarding the employer's medical leave policy. The employer refused to provide this information. Moreover, Nusbaum never received any materials providing information on FMLA leave and the employer had not complied with 29 U.S.C. § 2619's requirement that it post a notice

outlining the FMLA's important provisions and the employees' FMLA rights. Her employer also failed to prospectively designate her leave as FMLA leave in violation of 29 C.F.R. §§ 825.208 and .700. Nusbaum took the leave required for her surgery, and was discharged during her absence. Nusbaum then brought suit, alleging that her employer's failure to notify her of her right to twelve weeks of FMLA-protected leave, and her subsequent termination, interfered with her FMLA rights in violation of 26 U.S.C. § 2615(a)(1). The District Court denied the employer's motion to dismiss, holding as follows:

[T]he purpose of the regulations enacted by the DOL . . . is to ensure that employers allow their employees to make informed decisions about leave. . . . The overall intent of the FMLA is lost when an employer fails to provide an employee with the opportunity to make informed decisions about her leave options and limitations. Without such an opportunity, the employee has not received the statutory benefit of taking necessary leave with the reassurance that her employment, under proscribed conditions, will be waiting for her when she is able to return to work.

*Id.* at 385-86. The court concluded that Nusbaum "was, therefore, not given the proper information that would have allowed her to structure her leave in a way that would have left her protected by the FMLA." *Id.* at 386. We find this

reasoning of the *Nusbaum* Court persuasive.

The District Court in Conoshenti's case accepted his claim that the regulations imposed a duty on PSE&G to advise him of his FMLA rights and that a failure to do so could result in an "interference" under § 2615(a)(1). It distinguished *Nusbaum*, however, on the ground that Conoshenti had proven no prejudice as required by *Ragsdale*. In support of this conclusion, the Court first noted that "his ignorance of the nature of his leave ended on December 27." Accordingly, it held that Conoshenti's reliance on *Nusbaum* could only be used to delay the commencement of his twelve weeks of FMLA-protected leave from December 6th to December 27th; this would, in any event, have left him unprotected by the FMLA before he returned to work. The Court then observed that Conoshenti had "presented no evidence that he could have made a different choice had PSE&G informed him that his FMLA leave began on December 6," and made "only the bare assertion that he could have made different decisions." App. at 16a. We hold that the District Court's analysis is at odds with well-established principles governing the propriety of summary judgments.

The record indicates that in December 1999, Conoshenti contacted his union in order to learn what he needed to do to protect his job during his recovery. In response to this inquiry, the union advised Conoshenti to inform PSE&G that he wanted his leave to be considered FMLA leave. The record further indicates that

Conoshenti then sent a letter to PSE&G on December 27, 1999 stating that he "would like to request an immediate leave under the Family and Medical Leave Act." App. at 73a. Nothing in the record, however, indicates that Conoshenti knew that he was entitled to only twelve weeks of protected leave. Rather, the record simply reflects what Conoshenti was told to say and what he did say. The summary judgment record thus does not speak to Conoshenti's knowledge of his relevant FMLA rights on December 27th or thereafter during his leave.

Similarly, the summary judgment record, as the District Court correctly noted, contains no competent evidence regarding the alternatives that would have been available to Conoshenti had PSE&G advised him of his rights when he requested leave on December 6th. Only Conoshenti's brief contains a statement of what he would have done had he been advised of his rights.[8]

---

[8]Conoshenti insists that his recovery consisted of two phases: the initial recovery from the accident, and the subsequent recovery from the shoulder surgery. If he had known that he could not exceed twelve weeks of leave, he claims, he could have explored the feasibility of postponing the surgery to a subsequent FMLA period. The record does contain some support for Conoshenti's assertion that he could have returned to work within twelve weeks without the shoulder surgery. Prior to Conoshenti's visit with the orthopedic surgeon who recommended

While we agree with the District Court that these gaps in the record required it to deny Conoshenti's motion for summary judgment, they clearly did not warrant the grant of PSE&G's motion. It is well established that "a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "With respect to an issue on which the nonmoving party bears the burden of proof," "the burden on the moving party may be discharged by 'showing' – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Here, PSE&G never asserted that Conoshenti could not meet his burden of proving that he could have structured his leave differently. Nor did PSE&G argue that a showing of prejudice was an essential element of Conoshenti's claim or

---

immediate surgery, the record indicates that Conoshenti met with Dr. Edward A. Somma. Dr. Somma completed a doctor's note stating that Conoshenti would only require fourteen days of bed rest and medication and that he could return to work on December 20, 1999. App. at 233a-34a.

that such a showing was material in any way. Accordingly, we conclude that PSE&G, as the moving party, did not satisfy its initial burden of pointing to an absence of evidence as to whether Conoshenti had been prejudiced. Conoshenti was therefore not required, pursuant to Fed. R. Civ. P. 56(e), to respond with specific facts establishing a genuine issue with respect to the prejudice requirement. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

*2. The Discharge Claim*

Subsection 825.220(c) of the FMLA regulations provides:

> An employer is prohibited from discriminating against employees or prospective employees who have used FMLA leave. For example, if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid FMLA leave. By the same token, employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under "no fault" attendance policies.

It is apparent from the face of § 825.220(c) that to be successful on this claim, Conoshenti must show that (1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to

his leave.[9]    There is no dispute that

[9]The circuits have taken diverging paths in analyzing claims that an employee has been discharged in retaliation for having taken an FMLA leave. *Compare Arban v. West Publish. Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) (noting that such claims arise from § 2615(a)(2)), *and Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002) (same), *with Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1206 (11th Cir. 2001) (holding that such claims arise from § 2615(a)(1) and (2), as well as 9 C.F.R. § 825.220(c)), *and King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir. 1999) (same), *and Hodgens v. General Dynamics Corp.*, 144 F.3d 151, 159-60 (1st Cir. 1998) (same). All courts that have considered such situations have concluded that such discharges violate the FMLA. Some have done so without addressing the fact that retaliation for taking an FMLA leave does not come within the literal scope of the sections of the FMLA directed to retaliation:  § 2615(a)(2), making it unlawful to retaliate "against any individual for opposing any practice made unlawful by the [FMLA]," and § 2615(b), making it unlawful to retaliate against any individual for participating in any inquiry or proceeding related to the FMLA. *See Bachelder v. Amecica West Airlines, Inc.*, 259 F.3d 1112, 1124 (9th Cir. 2001). The Ninth Circuit, we believe appropriately, has predicated liability in such situations on § 825.220(c) of the

Conoshenti took an FMLA leave and that PSE&G discharged him on April 17, 1999. The issue for decision, accordingly, is whether the summary judgment record reflects a material dispute of fact as to whether there was a causal connection between the two.

PSE&G insists that Conoshenti was

regulations (quoted above), which is found in a section implementing § 2615(a) of the statute that, as we have noted, makes it unlawful to interfere with, restrain or deny any FMLA right. *See Bachelder*, 259 F.3d at 1124.  In *Bachelder*, the Ninth Circuit Court of Appeals rejected a challenge to the validity of that regulation. It did so by pointing out that § 2615(a) was patterned on § 8(a)(1) of the National Labor Relations Act ("NLRA"), 29 U.S.C. § 158(a)(1), which prohibits interference with rights created by that Act. Citing NLRA cases, the Court reasoned that the DOL was reasonable in concluding that employers utilizing the taking of FMLA leave as a negative element in employment decisions would inevitably chill employees in the exercise of those rights. 259 F.3d at 1123-24.  As we have noted, there is no challenge here to the validity of § 825.220(c).

Even though 29 C.F.R. § 825.220(c) appears to be an implementation of the "interference" provisions of the FMLA, its text unambiguously speaks in terms of "discrimination" and "retaliation," and we shall, of course, apply it in a manner consistent with that text.

discharged because he violated the LCA. In support of his claim that his FMLA leave was responsible for that decision, Conoshenti points primarily to three documents: (1) the April 17th termination letter which assigned as the reason for the discharge all 92 days of his absence from work; (2) the draft termination letter dated December 20th stating that Conoshenti would be terminated because of his absence from work from December 6th to December 16th; and (3) Wasser's December 27th note indicating that Conoshenti would be discharged upon his return to work.

The District Court concluded, and PSE&G does not contest, that these documents were sufficient "direct evidence" of Conoshenti's FMLA leave having been a factor in the discharge decision to give Conoshenti the benefit of the Supreme Court's decision in *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). *See Walden v. Georgia Pacific Corp.*, 126 F.3d 506 (3d Cir. 1997); *Woodson v. Scott Paper*, 109 F.3d 913 (3d Cir. 1997) (both recognizing that *Price Waterhouse* may properly be applied in a retaliation case when there is "direct evidence" of retaliatory animus). Under the *Price Waterhouse* framework, when an FMLA plaintiff "alleging unlawful termination presents 'direct evidence' that his [FMLA leave] was a substantial factor in the decision to fire him, the burden of persuasion on the issue of causation shifts, and the employer must prove that it would have fired the plaintiff even if it had not considered [the FMLA leave]." *Fakete*,

308 F.3d at 338 (applying the "direct evidence" analysis to a claim under the Age Discrimination in Employment Act).[10]

---

[10]We noted in *Fakete* that:
> "Direct evidence" means evidence sufficient to allow the jury to find that "the 'decision makers placed substantial negative reliance on [the protected activity] in reaching their decision'" to fire him. *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998) (quoting *Price Waterhouse*, 490 U.S. at 277, 109 S. Ct. 1775); *see also Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 248 (3d Cir. 2002) (same).

308 F.3d at 338-39.

Because there is such direct evidence here and *Price Waterhouse* accordingly places the burden of showing the absence of but-for cause on the employer, we have no occasion to consider whether the reference in 29 C.F.R. § 825.220(c) (emphasis added) to "*a* negative factor" makes it unnecessary for the plaintiff to prove but-for causation in FMLA retaliatory-discharge cases unaffected by *Price Waterhouse*. *See Bachelder*, 259 F.3d at 1124 (holding that to prevail on a claim under § 825.220(c), a plaintiff "need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the

14

Justice O'Connor explained that this burden requires the employer:

> To convince the trier of fact that it is more likely than not that the decision would have been the same absent consideration of the illegitimate factor. The employer need not isolate the sole cause for the decision; rather it must demonstrate that with the illegitimate factor removed from the calculus, sufficient business reasons would have induced it to take the same employment action. This evidentiary scheme essentially requires the employer to place the employee in the same position he or she would have occupied absent discrimination.

*Price Waterhouse*, 490 U.S. at 276-77.[11]

The District Court held that "there [was] no genuine issue of material fact regarding the proposition that [PSE&G] would have discharged [Conoshenti] for reasons not related to the FMLA leave." App. at 15-16. We agree.

Even when viewed in a light most favorable to Conoshenti, the record clearly indicates that Conoshenti would have been discharged absent any consideration of his

twelve weeks of FMLA-protected leave. Conoshenti himself conceded to the District Court, as well as in his brief on appeal, that any violation of the LCA "would be deemed automatic just cause and he would be fired." Pl.'s Mem. Supp. Summ. J. at 2; Appellant's Br. at 7. Here, there is no question that Conoshenti exceeded his twelve weeks of protected leave and, under the LCA, he was subject to immediate discharge on the very first workday that he was both absent from work and no longer protected by the FMLA.

Ironically, the evidence that Conoshenti relies upon, while permitting an inference that his absence from work during the twelve weeks following December 6th was a substantial factor in the decision to discharge him on April 17th, also demonstrates that he would have been discharged on April 17th had that prior absence not occurred. The December 20th draft termination letter, the Wasser December 27th note, and the fact that the draft termination letter was not sent demonstrate that PSE&G was determined both to respect Conoshenti's right to FMLA leave and to discharge him under the LCA as soon as it could legally do so. While the reference to 92 days in the April 17th termination letter might, in isolation, support an inference that the protected leave was considered in connection with the discharge decision, it would not support a finding that Conoshenti would not have been discharged on April 17th in the absence of having taken 12 weeks of protected leave.

decision to terminate her").

[11] We have previously recognized that Justice O'Connor's concurring opinion in *Price Waterhouse* represents the Supreme Court's holding in that case. *See Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 248 (3d Cir. 2002).

Because a rational trier of fact could not find in Conoshenti's favor, summary judgment in favor of PSE&G on this claim was appropriate.[12]

## B. The New Jersey *Pierce* Claim

In *Pierce v. Ortho Pharmaceutical Corp.*, 417 A.2d 505, 512 (N.J. 1980), the New Jersey Supreme Court recognized that an at-will employee "has a cause of action for wrongful discharge when the discharge is contrary to a clear mandate of public policy." An employee can prove such a wrongful discharge claim by "show[ing] that the retaliation is based on the employee's exercise of certain established rights, violating a clear mandate of public policy." *MacDougall v. Weichert*, 677 A.2d 162, 168 (N.J. 1996). "The sources of public policy include

----

[12]Conoshenti asserted an additional FMLA claim in the District Court based on 29 C.F.R. § 825.220(b), which provides that "'[i]nterfering with' the exercise of an employee's rights would include . . . manipulation by a covered employer to avoid responsibilities under FMLA." His theory was that PSE&G's alleged assurances that he should take as long as necessary to recover constituted "manipulation" under § 825.220(b). While Conoshenti's briefing before us refers to those assurances in support of his failure to advise claim, it does not assign as error the District Court's rejection of his "manipulation" claim. Accordingly, we have no occasion to address the viability of such a claim.

legislation; administrative rules, regulations or decisions; and judicial decisions." *Pierce*, 417 A.2d at 512. Furthermore, the New Jersey Supreme Court has recognized that "federal law and policy can constitute New Jersey's clear mandate of public policy." *D'Agostino v. Johnson & Johnson, Inc.*, 628 A.2d 305, 312 (N.J. 1993). Whether a plaintiff has established the existence of such a public policy is an issue of law. *Mehlman v. Mobil Oil Corp.*, 707 A.2d 1000, 1012 (N.J. 1998). "A salutary limiting principle is that the offensive activity must pose a threat of public harm, not merely private harm or harm only to the aggrieved employee." *Id.* at 1013. The public policy must also be "clearly identified and firmly grounded . . . . A vague, controversial, unsettled, and otherwise problematic public policy does not constitute a clear mandate." *MacDougall*, 677 A.2d at 167. "[U]nless an employee at will identifies a specific expression of public policy, he may be discharged with or without cause." *Pierce*, 417 A.2d at 512.

Conoshenti contends that he is entitled to recover under *Pierce* because he was discharged in violation of a clear public policy established by the FMLA,[13] *i.e.*, a

----

[13]At least one New Jersey court has expressly held that the FMLA establishes a clear mandate of public policy sufficient to support a *Pierce* claim. *See Hampton v. Armand Corp.*, 834 A.2d 1077, 1081 (N.J. Super. Ct. App. Div. 2003) (holding that a *Pierce* claim may rely on the FMLA as a source of public policy, but only if the

16

policy of ensuring the job security of employees who have serious health conditions that require temporary leave. If the record would support a finding that Conoshenti was discharged because he took FMLA leave, this might be a viable theory, although it is not clear to us that a *Pierce* claim in that event would be of any additional benefit to him. As we have held, however, the record will not support a finding that Conoshenti was discharged in retaliation for taking his FMLA leave.

We also conclude that Conoshenti would not have a meritorious *Pierce* claim based on the FMLA even if he were able to show that the failure to advise him of his FMLA rights caused him prejudice. The *Pierce* doctrine is about wrongful discharges, and it has only been applied where the discharge itself offended a clear public policy. Thus, all cases in which it has been successfully advanced have involved situations in which the discharge was in retaliation for conduct supported by the policy or for the employee's exercise of some established right. As the Supreme Court of New Jersey explained in *MacDougall v. Weichert*, 677 A.2d 162, 168 (N.J. 1996) (citations omitted):

_____

plaintiff is an "eligible employee" under the FMLA).

Conoshenti also asserts before us a *Pierce* claim based on the NJLAD. He expressly advised the District Court, however, that his *Pierce* claim was based solely on the FMLA and not on the NJLAD. Accordingly, any *Pierce* claim based on the NJLAD has been waived.

In most cases of wrongful discharge, the employee must show retaliation that directly relates to an employee's resistance to or disclosure of an employer's illicit conduct. In some cases, however, the employee may show that the retaliation is based on the employee's exercise of certain established rights, violating a clear mandate of public policy.

Conoshenti was discharged for violating the LCA and the conduct constituting that violation, and that discharge, accordingly, was unrelated to his having taken FMLA leave. As a result, we predict that the New Jersey Supreme Court would hold that Conoshenti's discharge did not give rise to a *Pierce* claim even if it was preceded by a failure to provide advice required by the FMLA. The District Court's summary judgment on Conoshenti's *Pierce* claim will, accordingly, stand.

## C. The NJLAD Claim

The NJLAD prohibits "any unlawful discrimination against any person because such person is or has been at any time disabled or any unlawful employment practice against such person, unless the nature and extent of the disability reasonably precludes the performance of the particular employment." N.J. Stat. Ann. § 10:5-4.1. Further, the New Jersey Administrative Code requires that an "employer must make a reasonable accommodation to the limitations of an employee or applicant who is a person with a disability, unless the employer can demonstrate that the accommodation

17

would impose an undue hardship." N.J. Admin. Cod tit. 13, § 13-2.5. This duty to accommodate, however, is subject to "an exception . . . where it can reasonably be determined that an . . . employee, as a result of the individual disability, cannot presently perform the job even with reasonable accommodation." N.J. Admin. Code tit. 13, § 13-2.8(a).

Conoshenti claims that PSE&G violated his rights under NJLAD by denying him a reasonable accommodation. "Generally, a *prima facie* case of failure to accommodate requires proof that (1) the plaintiff had a LAD handicap; (2) was qualified to perform the essential functions of the job, with or without accommodation; and (3) suffered an adverse employment action because of the handicap." *Bosshard v. Hackensack University Medical Center*, 783 A.2d 731, 739 (N.J. Super. Ct. App. Div. 2001) (citing *Seiden v. Marina Assoc.*, 718 A.2d 1230, 1237 (N.J. Super. Ct. Law Div. 1998)).

The District Court first correctly ruled that Conoshenti's temporary disability constituted a handicap under NJLAD. *See Soules v. Mount Holiness Mem. Park*, 808 A.2d 863, 865-66 (N.J. Super. Ct. App. Div. 2002) (holding that a "temporary inability to work while recuperating from surgery or injury is a handicap" under NJLAD); *see also Viscik v. Fowler Equip. Co.*, 800 A.2d 826, 835 (N.J. 2002) (noting that "[t]he term 'handicapped' in LAD is not restricted to 'severe' or 'immutable' disabilities and has been interpreted as significantly broader than the analogous

provision of the Americans with Disabilities Act (ADA)").

As to the second element, however, the District Court found that, as of the end of his FMLA-protected leave, Conoshenti was unable to perform any of the functions of his job. Accordingly, the District Court concluded that the only reasonable accommodation that would protect his employment status as of that date would have been a leave of absence. While noting the existence of federal cases recognizing a leave of absence as a "reasonable accommodation" under the ADA, the District Court nevertheless held that a leave of absence was not a reasonable accommodation under the NJLAD. It did not err in so holding.

As we have noted, the New Jersey Administrative Code provides an exception to an employer's obligation to provide a reasonable accommodation "where it can reasonably be determined that an applicant or employee, as a result of the individual's disability, cannot *presently perform* the job even with reasonable accommodation." N.J. Admin. Code tit. 13, § 13-2.8(a) (emphasis added). This provision of the New Jersey regulation reflects a significant difference between the ADA and NJLAD. While the ADA applies to employees "who, with or without reasonable accommodation, can *perform* the essential functions of the employment position that such individual holds or desires," 42 U.S.C. § 12111(8) (emphasis added); *see also* 29 C.F.R. § 1630.2(m), NJLAD protects only an employee who can *presently perform* the

18

essential functions of his job with or without the reasonable accommodation. The NJLAD regulation thus requires that the handicapped employee be able to perform the essential functions of his job *during* the application of the reasonable accommodation – that is, *at the same time* that the reasonable accommodation is being implemented. The ADA, however, does not contain any such temporal requirement. Accordingly, the federal courts that have permitted a leave of absence as a reasonable accommodation under the ADA have reasoned, explicitly or implicitly, that applying such a reasonable accommodation at the present time would enable the employee to perform his essential job functions in the near future. *See, e.g.*, *Criado v. IBM Corp.*, 145 F.3d 437, 444 (1st Cir. 1998) ("Criado offered evidence tending to show that her leave would be temporary and would allow her physician to design an effective treatment program."). That reasoning is precluded under NJLAD because of the present performance exception.

We decline to hold that a temporary leave of absence must be granted under NJLAD to reasonably accommodate a handicapped employee's inability to presently perform the essential functions of his job. Such a holding would effectively defeat the application of the present performance exception. Requiring PSE&G to grant Conoshenti a leave of absence as an accommodation following his FMLA leave would not have enabled him to presently perform his job; rather, it would have excused Conoshenti from present performance contrary to the explicit requirements of the NJLAD regulation. We are confident that the New Jersey Supreme Court would not sanction such a conflict. We will therefore affirm the District Court's grant of summary judgment in favor of PSE&G on Conoshenti's NJLAD failure-to-accommodate claim.

## V. Conclusion

The judgment of the District Court will be reversed insofar as it granted summary judgment to PSE&G on Conoshenti's FMLA failure to advise claim. It will be affirmed in all other respects. This matter will be remanded to the District Court for further proceedings consistent with this opinion.