OPINION OF THE COURT
SCIRICA, Chief Judge.
Conchita Smith sued Medpointe Healthcare, Inc., alleging discrimination based on age, race, disability, and gender in violation of the Age Discrimination in Employment Act (ADEA), the Americans with Disabilities Act (ADA), and the New Jersey Law Against Discrimination (NJLAD). She also alleged violations of the Family Medical Leave Act (FMLA) and related regulations.[1] Medpointe claimed it terminated Smith’s employment because she violated the company’s leave policy by missing more than six months of work in an eighteen-month period. The District Court granted summary judgment for Medpointe. Smith challenges the judgment against her, contending Medpointe violated an FMLA regulation, 29 C.F.R. § 825.220(c), by including FMLA-protect-ed leave time in its calculations of her absences. Smith also claims Medpointe retaliated against her for taking FMLA-protected leave. Additionally, Smith contends there is sufficient evidence of intentional age, race, disability, and gender discrimination to allow a reasonable juror to conclude the company’s reason for terminating Smith’s employment was pretext. We will affirm.
*232 I
Conchita Smith, a sales representative for Medpointe, missed nearly eleven months of work between July 7, 2002, and October 13, 2003. On July 7, 2002, Smith fell outside her doctor’s office, causing preterm pregnancy complications. Her doctors ordered her not to go back to work, which she did not. She gave birth on October 3, 2002, and remained out of work for several additional weeks. Smith’s doctors authorized her to return on December 23, 2002, and she began work again on January 2, 2003. Nearly four months later, on April 25, 2003, Smith injured her back in the course of her employment. This caused another absence, from April 25, 2003, until October 13, 2003, at which time Medpointe terminated her employment. The termination letter sent to Smith explained the company had a strong business need to have a sales representative cover the area assigned to her. The letter also cited Smith’s violation of the company’s leave policy, noting her absences from June 27, 2002, through December 23, 2002, and her absence from April 20, 2003, until the date of the letter in October 2003.[2] Under the Medpointe leave policy, issued on April 1, 2002, an employee is allowed no more than six months leave in any eighteen-month period.
The District Court granted summary judgment for Medpointe. It concluded Smith had taken non-FMLA leave in excess of six months during an eighteen-month period. Medpointe was accordingly entitled to conclude Smith had violated the company leave policy. Moreover, the court concluded Smith did not establish a prima facie case of FMLA retaliation because she could not show her FMLA leave caused her termination. Additionally, the District Court held that Smith’s evidence would not suffice to show intentional discrimination under the ADEA, the ADA, or NJLAD. Assuming she established a pri-ma facie case under these statutes, the court held that no reasonable fact finder could conclude Medpointe’s non-discriminatory explanation was a pretext for discrimination.[3]
II
Smith challenges the District Court’s conclusion that Medpointe did not violate the FMLA and related regulations. She asserts error in the calculation of her FMLA leave and in the determination that Medpointe did not retaliate against her for taking FMLA leave.
A
The District Court concluded Smith’s non-FMLA leave exceeded six months in an eighteen-month period. This established a violation of the Medpointe leave policy without running afoul of 29 C.F.R. § 825.220(c), which prohibits the counting of FMLA-protected leave toward *233 “no fault” attendance policies.[4] The court concluded Smith’s FMLA leave began on July 7, 2002 and ended on September 29, 2002, and she was not entitled to FMLA leave for her absences in 2003. Smith contends these determinations were wrong.
Smith does not contest the District Court’s conclusion that her FMLA leave began on July 7, 2002, but contends it lasted twenty-four weeks, ending on December 23, 2002, rather than September 29, 2002. Under the FMLA, an employee may take a leave of absence of up to twelve workweeks during any one-year period because of a serious health condition or the birth of a child, and the employer must then reinstate the employee in the same or reasonably comparable position. See 29 U.S.C. §§ 2612, 2614(a)(1). The twelve weeks beginning on July 7, 2002, ended on September 29, 2002. Accordingly, the remaining thirteen weeks and four days — between September 29, 2002, and January 2, 2003, when Smith returned to work — were not protected by the FMLA.
Smith also challenges the District Court’s holding that she was not entitled to FMLA leave in 2003. An “eligible employee” under FMLA must have been “employed for at least 1,250 hours of service during the 12-month period immediately preceding the commencement of the leave.” 29 C.F.R. § 825.110(a)(2); 29 U.S.C. § 2611(2)(A). Medpointe provided evidence that sales representatives’ schedules were set on a 37.5-hour workweek. Smith does not point to evidence that would show her hours were greater than 37.5 hours in any given week. Accordingly, during the twelve months prior to July 7, 2003,[5] Smith was employed for “hours of service” only between January 2, 2003, and April 25, 2003, approximately sixteen weeks. See 29 U.S.C. § 2611(2)(C) (“For purposes of determining whether an employee meets the hours of service requirement ... the legal standards established under” the Fair Labor Standards Act, 29 U.S.C. § 207, “shall apply.”); 29 U.S.C. § 207(e)(2) (precluding the counting of “periods when no work is performed due to vacation, holiday, illness, failure of the employer to provide sufficient work, or other similar cause”). During this period, based on the 37.5-hour workweek, Smith worked approximately 600 hours of service, which is less than the 1,250 hours required for FMLA-leave eligibility. Accordingly, the District Court properly determined Smith was not entitled to FMLA-protected leave during her 2003 absence.
In conclusion, Smith’s FMLA leave began on July 7, 2002, and ended on Septem *234 ber 29, 2002. Beginning September 29, 2002, she was absent for more than thirteen non-FMLA workweeks, returning to work on January 2, 2003. She missed an additional twenty-four weeks and one day between April 25, 2003, and October 13, 2003, also not protected by the FMLA. These non-FMLA absences — exceeding thirty-seven weeks — were all within an eighteen-month period. Accordingly, Smith’s violation of the Medpointe leave policy did not depend on counting Smith’s FMLA leave toward her absences,[6] and Medpointe’s application of its leave policy did not violate 29 C.F.R. § 825.220(c).
B
The District Court concluded Smith could not show retaliation under Conoshenti v. Public Service Electric & Gas Co., 364 F.3d 135, 146-48 (3d Cir.2004), because she could not establish that her FMLA leave caused the termination of her employment on October 13, 2003.[7] Smith challenges this determination.
Although, as noted, Smith’s non-FMLA leave violated Medpointe’s leave policy, the termination letter Medpointe sent to Smith explains her violation of the policy occurred because of absences from July 2002 until December 2002 and after April 2003. The first of these time periods included her FMLA-protected leave. Accordingly, the company’s letter identified FMLA-pro-tected leave as part of its reason for terminating Smith’s employment. We addressed a similar situation in Conoshenti. There, the employer terminated Conoshen-ti’s employment on April 17, noting ninety-two days of absences, a portion of which were protected FMLA leave. 364 F.3d at 146-48. The non-FMLA leave violated an absentee agreement between the company and Conoshenti, similar to a leave policy. Id. at 148. The employer’s “reference to 92 days in the April 17th termination letter might, in isolation, support an inference that the protected leave was considered in connection with the discharge decision,” we wrote. Id. But “it would not support a finding that Conoshenti would not have been discharged on April 17th in the absence of having taken 12 weeks of protected leave.” Id. We affirmed the grant of summary judgment in favor of the employer. Id. Conoshenti governs this case. Medpointe had just cause to terminate Smith’s employment because Smith’s non-FMLA leave violated its absence policy. Under Conoshenti, Medpointe’s termination letter cannot support a finding that Smith would not have been terminated in October 2003 had she not taken FMLA leave.[8] See id. Accordingly, Smith cannot show retaliation under the FMLA and its related regulations.
Ill
The District Court concluded a reasonable jury could not find Medpointe had *235 discriminated based on age, race, disability, or gender under the ADEA, the ADA, or the NJLAD. Under the McDonnell Douglas burden-shifting framework, see McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), the District Court assumed Smith had made out a prima facie case under each of these claims. But it determined the evidence she presented was insufficient to show Medpointe’s legitimate, non-discriminatory reason for terminating her employment — violation of the leave policy. — was pretext for discrimination. Smith challenges this conclusion. She points to the fact that, in the weeks prior to her termination, she received sales materials, and information about travel arrangements from Medpointe. She claims she gave notice on October 2, 2003, that her doctor had cleared her to begin work on October 13, 2003. She points to evidence that after her termination, a Medpointe employee was directed not to talk to her. This would allow George Renton, the vice president of human resources, to handle her calls directly. And Smith notes that of the four people who replaced her, none were hispanic women older than forty.[9]
To show that an employer’s legitimate, non-discriminatory reason for an employment action was pretext for discrimination, “the plaintiff must point to some evidence, direct or circumstantial, from which a fact-finder could reasonably either (1) disbelieve the employer’s articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer’s action.” Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir.1994).
Smith’s evidence does not suffice. It shows .that she wanted to return to work, that some Medpointe employees may not have known of her impending termination, that the company wanted to ensure one person would be the point of contact about her employment status, and that persons outside her protected class(es) were hired in her place. This would not permit a trier of fact reasonably to disbelieve Med-pointe’s reason for terminating Smith or conclude that some other invidious, discriminatory reason was more likely than not a motivating or determinative cause of Medpointe’s action. See id. Accordingly, Smith’s evidence is legally insufficient to support a finding of discrimination.
IV
For the foregoing reasons, we will affirm the judgment of the District Court.

. Smith also brought claims under the Consolidated Omnibus Budget Reconciliation Act (COBRA), but she has not appealed on this ground.

. Smith contends her 2002 absence began on July 7, 2002, and her 2003 injury did not occur until April 25, 2003. For purposes of summary judgment, we accept her version of the facts.

. The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367, and we have jurisdiction over the appeal under 28 U.S.C. § 1291. We exercise plenary review over the grant of summary judgment, and we draw all reasonable inferences in favor of the nonmov-ing party, Smith in this case. See Ruehl v. Viacom, Inc., 500 F.3d 375, 380 n. 6 (3d Cir.2007). Summary judgment should be granted for Medpointe if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that [Medpointe] is entitled to judgment as a matter oflaw." Fed.R.Civ.P. 56(c).

. According to the regulation, "employers cannot use the taking of FMLA leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can FMLA leave be counted under ‘no fault' attendance policies.” 29 C.F.R. § 825.220(c). The FMLA does not, however, prohibit leave policies more generous than what would minimally comply with the Act. 29 U.S.C. § 2653.
The District Court explained that Smith may have been entitled to more protected leave in 2002 than the FMLA provides — leave protected under the New Jersey Family Leave Act. Smith has not, however, claimed a violation of the New Jersey Family Leave Act, and 29 C.F.R. § 825.220(c) only prohibits the counting of FMLA leave under “no fault” attendance policies.

. The Medpointe FMLA policy is based on the rolling twelve-month period, one of four permissible methods of calculating leave. See 29 C.F.R. § 825.200(b), (c) (‘‘[E]ach time an employee takes FMLA leave the remaining leave entitlement would be any balance of the 12 weeks which has not been used during the immediately preceding 12 months.”). Under the Medpointe policy and FMLA regulations, Smith would not have been eligible to take FMLA leave in 2003 before July 7 because she had already taken one twelve-week leave period within the prior twelve months.

. Smith contends the absences between December 23, 2002, and January 2, 2003, should not count against her under the Medpointe leave policy because Medpointe was not open for business for the holiday. Even excluding this leave, however, Smith's total leave would have exceeded the six months permitted under the company policy.

. To prove FMLA retaliation, a plaintiff must show (1) she look FMLA leave, (2) she suffered an adverse employment decision, and (3) the adverse decision was causally related to her leave. Conoshenti, 364 F.3d at 146.

.Smith also contends the temporal proximity between her FMLA leave and the termination was sufficient to establish causation. This claim, however, is predicated upon her belief that she was on FMLA leave in October 2003. As noted, however, Smith was not on FMLA leave in October 2003; she was not eligible for any FMLA leave in 2003. Her FMLA leave ended more than a year earlier, on September 29, 2002.

. Smith also contends Medpointe’s leave policy was pretext because she did not violate the policy, at least not as she would construe it under 29 C.F.R. § 825.220(c). We rejected this argument supra Part II. Medpointe's application of its leave policy to Smith's circumstances did not violate § 825.220(c).