NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-1889
_____

PATRICK DUNCAN,
                              Appellant

v.

THE CHESTER COUNTY HOSPITAL
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(E.D. Pa. No. 5-14-cv-01305)
U.S. District Judge:  Honorable Lawrence F. Stengel
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
January 17, 2017

Before:  FISHER, HARDIMAN and GREENAWAY, JR., *Circuit Judges*.

(Filed: January 26, 2017)
_____

OPINION[*]
_____

FISHER, *Circuit Judge*.

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Fired from his job, Patrick Duncan sued the Chester County Hospital alleging interference and retaliation claims under the Family Medical Leave Act of 1993 (FMLA).[1] The District Court granted the Hospital summary judgment. Duncan appeals. We will affirm.

I.

Duncan, a technologist in the Hospital's radiology department, didn't get along with Dr. Thomas Quinn, the principal radiologist there. Tensions began in May 2012 when Quinn said Duncan failed to prepare his workspace for him, affecting patient care. Duncan received a disciplinary warning for it. In response, Duncan gave the Hospital his written account of what happened. Believing it false, Quinn stopped trusting Duncan. Their relationship thereafter became "tense, unpleasant, and toxic."[2] Except for patient matters, Quinn avoided Duncan entirely.

About eight months later, on February 14, 2013, Quinn apparently saw Duncan contaminate a sterile tray before a patient procedure. He reported it to Duncan's supervisor, Sue Lombardo, who told Colleen Scelsa, the administrative director of radiology, on February 21 after she returned to work from an absence. Duncan met with Scelsa that day, where he expressed frustration about his treatment in the workplace, said he wanted to leave the department or work part-time, and explained he was considering going back to school. On February 26, Scelsa gave Duncan a final disciplinary warning

_____

[1] 29 U.S.C. § 2601 *et seq.*
[2] App. 7a (internal quotation marks omitted).

for the contamination incident. That was soon withdrawn, however, and replaced with a quality action form (QAF), a non-disciplinary corrective measure.

Around this time, Duncan told the Hospital he wished to take FMLA leave for knee-replacement surgery. He told human resources on February 20 and Scelsa and Lombardo by email on February 21. He received the necessary FMLA paperwork and gave it to his physician, who approved and returned it to the Hospital on March 18. Scelsa authorized Duncan's FMLA leave on March 19. Surgery was set for April 16, 2013.

Duncan's workplace difficulties continued. In mid-March 2013, Quinn refused to meet with Duncan for a HR-scheduled conciliation session. On March 20, Duncan received another QAF, this time for failing to document a patient's allergies and sign "timeout forms" in 2013's first quarter. He met with Scelsa again, who told him further infractions could result in discipline. In response, Duncan said he wanted to move departments again and that he may not return to work the next week. Lombardo apparently saw Duncan leave the meeting, grab his personal items, and slam a filing cabinet shut before leaving work. She told Scelsa about it. Scelsa told an employee in HR, who terminated Duncan's work passwords per Hospital policy. Later that day, Duncan told HR by phone he hadn't resigned, despite his conduct. A meeting was scheduled for March 22.

At the meeting, Duncan reiterated that he didn't want to work in his department anymore, he wanted to switch to part-time employment, and he wanted to go back to school. He allegedly refused to answer whether he'd obeyed HR's directive that he not air his workplace grievances with other Hospital employees. When the meeting ended, Duncan apparently said, "[G]oodbye, it's been a great run."[3] HR told him not to report to work until further notice.

By letter dated March 26, 2013, the Hospital fired Duncan. It explained, however, that if his knee surgery occurred on or before April 30, 2013, he would still be entitled 12 weeks' FMLA leave with health-insurance coverage, despite his termination. Duncan, however, had cancelled his surgery on a date he couldn't recall. He thus never commenced FMLA leave.

In March 2014, Duncan sued the Hospital in the District Court, alleging FMLA interference and retaliation claims. In a thorough opinion, the District Court granted the Hospital's summary judgment motion and denied Duncan's. This timely appeal followed.

II.

The District Court had jurisdiction under 28 U.S.C. § 1331. Our jurisdiction is under 28 U.S.C. § 1291. We review summary judgment orders *de novo*.[4] If the material

_____

[3] App. 14a.
[4] *Leonard v. Stemtech Int'l Inc.*, 834 F.3d 376, 395 n.17 (3d Cir. 2016).

facts are not genuinely disputed and the movant is entitled judgment as a matter of law, summary judgment is warranted.[5]

## III.

Duncan argues summary judgment wasn't warranted here because a reasonable jury could conclude that the Hospital interfered with and retaliated against him for invoking his FMLA rights. For the reasons that follow, we disagree.

### A.

Interference first. To make out a FMLA interference claim, the employee must prove he was entitled a benefit under the FMLA that his employer withheld.[6]

Duncan argues the Hospital withheld his right to reinstatement to his position by firing him before he took leave. He's incorrect—he held no such right. The FMLA gives an eligible employee "who takes leave" the right to reinstatement "*on return* from such leave."[7] An employee cannot "return" from FMLA leave he never actually commenced. Duncan cites no decision suggesting otherwise. Because Duncan never actually commenced his approved FMLA leave—though he "took" it in principle for FMLA

---

[5] *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986).
[6] *See Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 312 (3d Cir. 2012).
[7] 29 U.S.C. § 2614(a)(1) (emphasis added).

purposes[8]—his right to reinstatement never ripened.[9] The Hospital therefore could not have withheld it. No reasonable jury could find interference here.

Duncan also suggests the Hospital interfered with his FMLA right to take 12 weeks' leave for his knee surgery. But no reasonable jury could agree. Even after firing him on March 30, 2013, the Hospital gave Duncan the option to take 12 weeks' leave if his surgery occurred on or before April 30, 2013. Accordingly, Duncan failed to raise a triable issue of fact on whether this right was withheld.

Finally, Duncan contends the Hospital interfered with his right to take FMLA leave by firing him. We see no error in the District Court's decision to treat this contention as supporting a claim for retaliation under the FMLA, not interference.[10] Summary judgment was therefore warranted on this claim.

B.

---

[8] We interpret the requirement that an employee "take" FMLA leave to "connote invocation of FMLA rights, not actual commencement of leave." *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009). Thus, Duncan technically "took leave" when he contacted HR about his knee surgery on February 20, 2013.

[9] *See* 29 U.S.C. § 2614(a)(1); 29 C.F.R. § 825.214 (reinstatement is owed "[o]n return from FMLA leave"); *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 252 (3d Cir. 2014) (reinstatement is owed "upon return from FMLA leave"); *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 271 (3d Cir. 2012) (reinstatement is owed "on return from [FMLA] leave" (internal quotation marks omitted)); *Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005) (reinstatement is owed "[f]ollowing a qualified absence"); *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 141 (3d Cir. 2004) (reinstatement is owed "[a]fter an eligible employee returns from an FMLA leave").

[10] *See* App. 21a–23a (citing *Lichtenstein*, 691 F.3d at 312 n.25).

Next, retaliation. To make out a FMLA retaliation claim, the employee must prove he invoked his right to FMLA leave and suffered an adverse employment action causally related to doing so.[11] Here, Duncan invoked his right to FMLA leave and suffered an adverse employment action (termination). But we agree with the District Court that he failed to adduce evidence from which a reasonable jury could find a causal connection between the two. Summary judgment was therefore appropriate.

Where the temporal proximity between the FMLA-protected activity and adverse action is "unduly suggestive," we infer causation.[12] Here, Duncan requested FMLA leave on February 20, 2013 and was fired March 26, 2013, thirty-four days later. The District Court held—and we agree—that this timeline isn't by itself unduly suggestive.[13]

Without an unduly suggestive temporal proximity, we ask if the record raises an inference of causation through, for example, a pattern of antagonism.[14] It doesn't here. Seeking to prove antagonism, Duncan points to several events between when he invoked his FMLA rights on February 20 and when he was fired on March 26. The District Court was correct that none creates a triable issue of fact on causation.

First, Duncan suggests the later-withdrawn February 26, 2013 final disciplinary warning—issued six days after he requested FMLA leave—raises an inference of

---

[11] *Ross v. Gilhuly*, 755 F.3d 185, 193 (3d Cir. 2014).

[12] *Lichtenstein*, 691 F.3d at 307.

[13] *See id.* (finding an unduly suggestive temporal proximity when the employee was fired seven days after invoking her FMLA rights and citing decisions with similar timelines).

[14] *See id.*; *Budhun*, 765 F.3d at 258.

7

causation or retaliatory animus. But the record shows it was issued because Duncan contaminated a sterile tray on February 14, six days *before* he requested FMLA leave, and that Scelsa delayed issuing it until February 26 because she was absent from work until February 19. We therefore agree with the District Court that no reasonable jury could find the final warning suggestive of an antagonistic pattern. Duncan says Quinn issued the final warning because he "didn't like" him and "did not like an employee he disfavored getting leave."[15] But Quinn didn't issue the final warning—Scelsa did. And Quinn said he was unaware that Duncan had requested FMLA leave until sometime later. Duncan offered no evidence to rebut Quinn's testimony, rendering it undisputed.

Second, Duncan says we should infer antagonism and retaliatory animus from Quinn's refusal to meet with him at the HR-scheduled conciliation session in mid-March 2013. But again, there's no dispute Quinn didn't know Duncan requested FMLA leave on the date of the session. No reasonable jury could find antagonism here.

Third, Duncan argues the Hospital's issuance of QAFs and his March 20, 2013 meeting with Scelsa evidence causation. We disagree. Replacing the February 26 final warning, the first QAF was issued because Duncan contaminated a sterile tray on February 14, six days before he requested FMLA leave. The first QAF thus fails to create a triable issue of fact on causation for the same reasons the final warning does. As for the second QAF, the record shows Lombardo issued it for Duncan's failure to properly

---

[15] Duncan Br. 41.

8

complete timeout forms for patient procedures occurring on January 10 and February 7, 2013.[16] Because these procedures occurred before Duncan asked for FMLA leave on February 20, the second QAF likewise fails to create a genuine dispute of material fact on causation. As for Duncan's March 20 meeting with Scelsa, the record amply supports the District Court's characterization of it as a back-and-forth discussion about the QAFs and Duncan's desire to work in a different department. No reasonable jury could find that Scelsa called this meeting to antagonize Duncan, as he suggests.

Fourth and finally, Duncan calls into question the March 22, 2013 meeting that occurred before his termination. But given the evidence of Duncan's conduct during and after the March 20 meeting with Scelsa—where he stated he may not return to work and removed his personal items—we agree the record shows that the March 22 meeting was called to respond to Duncan's workplace difficulties, not to antagonize him. No reasonable jury could infer causation or retaliatory animus from the final meeting.

In sum, we agree with the District Court that the record shows Duncan was counseled regarding errors in the workplace, there were ongoing discussions and attempts to resolve his workplace issues with Quinn, and Duncan's behavior and attitude at work became problematic. We also agree the record is devoid of evidence from which a reasonable jury could conclude that the Hospital retaliated against Duncan for invoking his FMLA rights. Summary judgment was warranted on this claim.

---

[16] App. 355a.

IV.

For these reasons, we will affirm the District Court's judgment.