NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 18-3173

STANLEY SHINN;
PAUL ELLIS,

Appellants

v.

FEDEX FREIGHT, INC.

Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil Action No. 1-16-cv-00777)
District Judge: Honorable Noel L. Hillman

Submitted Under Third Circuit L.A.R. 34.1(a)
June 17, 2019

Before: AMBRO, RESTREPO, and FISHER, Circuit Judges

(Opinion filed: August 22, 2019)

OPINION[*]

AMBRO, Circuit Judge

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Stanley Shinn and Paul Ellis appeal the District Court's ruling on summary judgment that FedEx Freight, Inc. did not violate the New Jersey Law Against Discrimination ("NJLAD") or the federal Family and Medical Leave Act ("FMLA") when it fired them for threats of violence against other FedEx employees. We affirm.

**Background**

Shinn and Ellis worked as city drivers for FedEx in Delanco, New Jersey until 2015. While employed there, they were subject to the company's employee handbook, which included a code of conduct that prohibited "workplace violence." J.A. 167. This included "gestures and expressions that communicate a direct or indirect threat of harm," as well as "oral and written statements." *Id.* FedEx also held a workplace violence prevention meeting prior to the incidents here, which Shinn and Ellis attended. At this meeting, FedEx addressed previous violations and reset its expectations: "Regardless of how corrective action has previously been addressed at this center for threats or other workplace violence incidents, going forward any team member who is found to have engaged in such serious prohibited behavior will be subject to termination of employment." *Id.* at 204. FedEx terminated Shinn and Ellis after investigating each for separate incidents of workplace violence.

A. Shinn's firing

In April 2015, Steven Buckley, another driver, accosted Shinn in the breakroom, referring to him and Ellis as "Facebook fags" and "union fags." *Id.* at 89. Shinn confronted Buckley, and they got into a heated argument. After they screamed obscenities at each other, Shinn asked Buckley to "go outside away from everyone and

2

talk about this," but the argument was cut short when their shift meeting started. *Id.* at 88–90. Later in the day at the loading dock, Shinn again asked Buckley to go to a nearby softball field to talk about the earlier fight. Buckley declined, and both men returned to work.

Neither Shinn nor Ellis reported Buckley's use of homophobic slurs to their FedEx supervisors. A different employee reported the breakroom incident, prompting FedEx to investigate. Security Specialist Charles Bergeron interviewed Shinn, Ellis, and 11 other employees, and shared his results with FedEx Manager Brian Jenkins, who concluded that Shinn's suggestion to take the conversation to a different location was a threat of violence. FedEx terminated Shinn's employment in late May 2015. He filed an internal appeal of his termination with FedEx's Termination Appeal Review Committee, which upheld his termination.

Buckley's use of anti-gay slurs during the breakroom incident also violated FedEx policy. FedEx suspended him for three days with pay.

B. Ellis's firing

Before his termination, Ellis frequently took leave under the FMLA to receive treatments for his chronic back pain and to take care of his sick mother. He alleges that FedEx retaliated against him for his use of FMLA leave by assigning him to undesirable routes and, eventually, terminating him.

In late May 2015, Ellis called his supervisor early in the morning to use FMLA leave. Later that morning, another driver sent Ellis a private Facebook message saying, "Got u going to BJs 25 skids," indicating that Ellis had been scheduled to make a

3

delivery to BJs Warehouse, a difficult and undesirable shift. *Id.* at 256–57. Because Ellis

took the day off, this assignment was covered by another driver. Ellis was not assigned

to BJs again. He had serviced BJs six times between January 2013 and May 2015, both

before and after he was certified for FMLA leave.

In addition to BJs, full-trailer deliveries to Performance Food Group and Dunkin',

Ellis' usual customers, were undesirable assignments. Ellis perceived a "pattern" of

getting these assignments immediately after taking FMLA leave, but he "did not keep

records of [his] days off or . . . when [he] had full trailer loads." *Id.* at 127–128.

Between January 2013 and July 2015 when he was terminated, he made no full truckload

deliveries to Dunkin' and only two full truckload deliveries to PFG.

Use of FMLA leave was common at FedEx. Between May 2013 and May 2017,

its Delanco service center had 42 employees certified to take FMLA leave. FedEx first

approved Ellis's use of intermittent FMLA leave in July 2013 and continued to

reauthorize his FMLA leave each subsequent year. Ellis called out approximately two

days per month under the Act. He continued to receive pay raises and benefits under the

same terms as other drivers, and FedEx never denied him time off when he called out.

In late June 2015 an employee gave FedEx manager Chuck Long a printout of

Facebook comments made publicly by Shinn and Ellis from the previous night. The

printout included the following comments:

> Stan Shinn[:] It's funny how low Snakes In the grass will stoop to kiss a
> little fedex ass people you used to trust and I called friend sneake up and
> ambush you and get me fired just to look good for fedex I wonder who they
> [are] going to send steve after next[.]

4

> Paul Ellis[:]  Me….that fucker just waltz's down the dock every morning happy as can be….like nothing happened….given the chance…he's gonna have an accident on the dock….
>
> Stan Shinn[:]  Nothing lower than a fellow worker getting another worker fired[.]
>
> Paul Ellis[:]  YUP He's a SCUMBAG[.]

*Id.* at 183 (reactions and timestamps omitted).  Bergeron investigated the Facebook comments as an incident of possible workplace violence on July 1, 2015.  During the investigation, Ellis admitted that he understood how his post could be perceived as a threat.  Jenkins concluded those comments were threats of violence that violated the employee handbook.  Ellis was terminated effective July 9, 2015.  He appealed to FedEx's Review Committee, but it upheld his termination.

Shinn and Ellis brought claims for retaliation under the NJLAD in state court in early 2016.  Ellis also alleged retaliation under the FMLA.  FedEx removed the case to federal court.  After plaintiffs amended their complaint twice and after discovery, FedEx moved for summary judgment, which the District Court granted.

**Standard of Review**

We review the District Court's grant of summary judgment *de novo.  Faush v. Tuesday Morning, Inc.*, 808 F.3d 208, 215 (3d Cir. 2015).  Viewing the facts in the light most favorable to the nonmoving party, summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018).  There is no genuine issue when "the nonmoving party has failed to make

a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**Discussion**

A. <u>NJLAD Claims</u>

The NJLAD protects employees against employer discrimination. As relevant here, it provides that it is an unlawful employment practice

> [f]or any person to take reprisals against any person because that person has . . . filed a complaint, testified or assisted in any proceeding under this act or to coerce, intimidate, threaten or interfere with any person in the exercise or enjoyment of, or on account of that person having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected by this act.

N.J.S.A. 10:5-12(d). NJLAD plaintiffs must show three elements: "(1) they engaged in a protected activity known by the employer; (2) thereafter their employer unlawfully retaliated against them; and (3) their participation in the protected activity caused the retaliation." *Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167, 1192 (N.J. 2008) (citation omitted).

New Jersey courts have adopted the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973), to analyze the causal relationship, though they note that this test should not be used "inflexibly." *Grigoletti v. Ortho Pharm. Corp.*, 570 A.2d 903, 907 (N.J. 1990). The *McDonnell Douglas* framework entails three steps: (1) the plaintiff must first establish a *prima facie* case (meaning he has provided sufficient evidence to prove the elements of his claims); if so, (2) the burden then shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the termination; if it can, (3) the burden shifts back to the plaintiff to show that the

6

employer's stated reason was "pretext." *McDonnell Douglas*, 411 U.S. at 802–04. The plaintiff can show pretext by pointing to evidence that would allow a factfinder either to "disbelieve the employer's reason" or "believe that an invidious discriminatory reason was 'more likely than not a motivating or determinative cause.'" *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644–45 (3d Cir. 2015) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

Shinn cannot make a *prima facie* case because he cannot show that his assistance of the investigation into the breakroom incident caused his termination. He relies heavily on the proximity in time between the investigation on May 7 and his termination on May 21 to prove a causal link. In "certain narrow circumstances," proximity in time can be "unusually suggestive" and sufficient on its own to prove causation. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1302 (3d Cir. 1997)). Generally, however, courts consider the broader context surrounding the termination, including ongoing antagonism toward the employee and inconsistent reasons given for the termination. *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280–81 (3d Cir. 2000). Nothing here suggests that FedEx fired Shinn to retaliate for participating in the investigation. He has presented no evidence of animus toward the participants in the investigation, for of the 11 employees interviewed by Bergeron, 10 are still employed with FedEx. Instead, he appears to have been fired for his actual role in the breakroom incident.

Ellis's termination is even further removed from the breakroom investigation. FedEx fired him two months after he participated in the investigation, which is too long

7

to suggest a causal relationship on its own. *See Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 759–60 (3d Cir. 2004) (explaining that a two-month gap is not suggestive of a causal connection between protected activity and termination).

Even if the plaintiffs could show a causal link, they cannot establish pretext. Shinn and Ellis have not pointed to evidence that would make a factfinder doubt FedEx's given reason—that it fired them because it concluded they violated the employee code of conduct.

Shin and Ellis argue that the differential treatment of Buckley and another employee, Steve Raidy, establishes pretext. We cannot agree. Although Buckley also violated the employee handbook by using homophobic slurs, his lesser punishment could reflect FedEx's judgment that threats of violence require a more decisive intervention than Buckley's violations. Indeed, FedEx conveyed a new, no-tolerance stance towards workplace violence less than a month before the breakroom incident. The discussion of Raidy is similarly futile. Shinn and Ellis have failed to provide evidence of what misconduct occurred, whether it was reported, how FedEx investigated it, or what corrective actions were taken to reprimand him. The record only supports that some "Raidy incident" occurred at some point. The District Court correctly found that the "vague descriptions" of a Raidy incident, without more evidence, cannot create a genuine issue of material fact required to survive summary judgment. *Shinn v. FedEx Freight, Inc.*, No. 1:16-cv-777 (NLH/KMW), 2018 WL 4275993, at *8 (D.N.J. Sept. 7, 2018).

8

B. Ellis's FMLA Claim

The FMLA "prohibits an employer from discriminating or retaliating against an employee . . . for having exercised or attempted to exercise FMLA rights." 29 CFR § 825.220(c). A plaintiff's FMLA retaliation claim must demonstrate the following elements: "(1) he took an FMLA leave, (2) he suffered an adverse employment decision, and (3) the adverse decision was causally related to his leave." *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 146 (3d Cir. 2004). FMLA retaliation claims based on circumstantial evidence are, as with the NJLAD claim, evaluated using the *McDonnell Douglas* framework. *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 302 (3d Cir. 2012).

Ellis failed to provide sufficient evidence to show he was given undesirable routes because of his use of FMLA leave. He alleges both a specific instance of retaliation on May 22, 2015, and a general "pattern" of retaliation following the days on which he used leave. Neither is supported by the record. FedEx supervisors scheduled Ellis to go to BJs on May 22 before they realized that he had called out that morning, not to retaliate against him. Once FedEx knew that Ellis was using FMLA leave, it reassigned the BJs' delivery to a different driver and did not assign Ellis to BJs again. His allegation of a general pattern of retaliation also lacks support. He did not keep a record of his days off and the undesirable assignments. FedEx records indicate that the "undesirable" trips were much less frequent than days he took off and occurred both before and after he was certified for FMLA leave.

9

Likewise, Ellis cannot demonstrate a causal link between his FMLA leave and his termination. He consistently used FMLA leave for two years without issue. Each time he called out sick, his supervisors covered his shifts, and each year that he applied for recertification, FedEx approved. It also actively accommodated FMLA leave for 42 employees between May 2013 and May 2017 at the Delanco service center.

Instead, FedEx terminated Ellis because it concluded he violated the company's prohibition on workplace violence. He admitted to his supervisors that his Facebook message could be perceived as threatening, and he was fired shortly after the investigation concluded.

In sum, Shinn and Ellis have failed to establish a genuine issue of material fact that would allow the plaintiffs to survive summary judgment. Thus we affirm.